RALPH W. REDMAN & another, executors, *vs.* ELLA I. CHURCHILL.

Norfolk.     March 14, 1918. — May 27, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Devise and Legacy.   Husband and Wife.   Gift.*

A devise and bequest of a testator to his wife of one third part of the real and personal property "belonging to me and standing in my name, but no part of the real or personal property held by me as executor or trustee of the estate of my mother" entitles the widow to no right to share in certificates of stock and mortgages which the testator before his death transferred and assigned to himself as the executor of his mother's will.

In the case in which the point above stated was decided, it appeared that the property which the testator assigned and transferred to himself as the executor of his mother's will amounted in value to at least $50,000, that the assignments and transfers were made for the purpose of preventing his wife from receiving any part of this property and that the executor of the testator's will paid to his widow as one third of the property standing in his name at the time of his death the sum of $825.69, and it was *said*, that, if the question of fraud were open, there was nothing to show that the husband practised any legal fraud upon his wife.

It here was *said* that a husband has a right to give away his personal property during his lifetime without his wife's consent.

It also was *said* that a gift made by a husband to himself as the executor of his mother's will of the greater part of his personal property for the purpose of preventing his wife from acquiring any portion of the property so given by him is valid.

APPEAL from a decree of the Probate Court for the county of Norfolk allowing the first account of the executors of the will of Chauncey S. Churchill, late of Dedham.

The case was heard by *Loring*, J., who reserved and reported it for determination by the full court as follows: "The facts of the case were that the deceased transferred property which was in fact his own to himself as executor of the will of his mother. The amount of property so transferred was not agreed upon but it was agreed that the property so transferred amounted to at least $50,-000. The executors did not transfer or otherwise give to the widow of the deceased any of that property. They did not give to the

widow of the deceased any of that property because by the terms of the will of the deceased the bequest to the widow was 'one third of the property, both real and personal, belonging to me and standing in my name.' I was of opinion that as matter of description the property so transferred by the deceased was not within the legacy thus given by the deceased to his widow and that the decree allowing the account would have to be affirmed, but I stated to counsel that I would reserve the case (without making a ruling) for the consideration of the full court. When the time came for settling the terms of the reservation the appellant wished me to make findings of fact which had to do with a claim made by the appellant that the transfer of this property was fraudulent. I am of opinion that there is no question of fraud involved in the appeal in question. I dislike to make findings of fact on an issue which has not been formulated and which in my opinion is not on trial. If the appellant wishes to raise the question of fraud I am of opinion that he must bring a bill in equity charging that the transfer was made by fraud and that the residuary legatees of his will cannot claim to hold property which comes to them in part under that fraud. Whether such a bill can be maintained in law and whether, if it can be maintained in law, the appellant can in fact make out the necessary allegations of such a bill is not a matter before me and one on which I do not undertake to express a final opinion. Under these circumstances I have come to the conclusion that the best way of administering justice in this appeal will be by entering now *nunc pro tunc* an order appointing the stenographer who took the evidence commissioner to report the testimony and accordingly I have entered such an order. I now reserve the case for the consideration of the full court upon the appeal (including the record of the proceedings in the Probate Court), the objections of the appellant to the decree appealed from and the evidence taken by the commissioner including all exhibits introduced in evidence before me relating to the estates of Permelia S. Churchill and Chauncey S. Churchill. I also reserve for the consideration of the full court my power to take the action taken by me above, including the making of this reservation."

*H. T. Richardson,* for the appellees.

*W. A. Morse,* (*G. M. Poland* with him,) for the appellant.

CARROLL, J. The appellant is the widow of Chauncey S. Churchill who died October 5, 1914. By his will he gave her one third of his real and personal property "belonging to me and standing in my name, but no part of the real or personal property held by me as executor or trustee of the estate of my mother, Parmelia S. Churchill, or of the property in which I have a life interest and power of disposition by will." The residue of his estate "or over which I have, under the will of my mother or otherwise, the power of distribution," he gave in trust for the benefit of his children. In 1913 he transferred and assigned to himself as executor of his mother's will certificates of stock and mortgages which were in fact his own, to the amount of at least $50,000. The executors filed their account showing a payment to Mrs. Churchill of $825.69, which was one third of the property standing in the name of the husband at the time of his death. This account was allowed in the Probate Court and Mrs. Churchill appealed to the Supreme Judicial Court.

She contends she is entitled to receive from the executors in addition to the amount of $825.69, — which was one third of all the property standing in her husband's name at the time of his death, — one third of the certificates and mortgages which he assigned and transferred to himself as the executor of his mother's will. It was agreed that these assignments and transfers were made for the purpose of preventing his wife from receiving any part of this property. The single justice before whom the case was heard was of opinion that the property conveyed was not within the description "belonging to me and standing in my name," and reserved the case for the consideration of this court.

The language of the will and the evidence of his intention introduced at the hearing, showed that the testator intended to give his wife one third only of the property which he owned and which stood in his name when he died, and did not intend to include in this bequest any portion of the property which he had transferred to his mother's estate and which he held as the executor of her will. The certificates of stock and mortgages, of which Mrs. Churchill now claims a share as legatee under her husband's will, were not his property. They had been transferred and were a part of his mother's estate.

Even if the question of fraud were open in these proceedings,

there is nothing to show that the husband practised any legal fraud on the appellant. He had the right to dispose of his personal property during his lifetime without her consent, and she cannot impeach a gift made by him as a fraud upon her because made to prevent her from acquiring any portion of it. He could make a gift to himself as executor of his mother's will, and when this was done the property was no longer his. In *Leonard* v. *Leonard,* 181 Mass. 458, it was held that the intent to defeat a claim which otherwise a wife might have, was not enough to defeat a conveyance of the husband's real estate and gifts of personal property. The wife had no right to insist that the husband should hold all the property he owned during his marriage until his death, and such a conveyance or gift is not a fraud on the marital rights of his wife. *Kelley* v. *Snow,* 185 Mass. 288, decided that the right of a married woman to her personal estate, so far as her husband was concerned, was absolute, and she could sell it or give it away provided the conveyance was real and made to take effect in her lifetime. See *Seaman* v. *Harmon,* 192 Mass. 5, where the case of *Brownell* v. *Briggs,* 173 Mass. 529 is distinguished. *Bone* v. *Holmes,* 195 Mass. 495. *Keyes* v. *Carleton,* 141 Mass. 45. The testator had a right to convey to a third person who was the executor of another's will, property which belonged to himself, and he could transfer his own property to himself as executor of his mother's will, by way of gift. At the time of his death the mortgages had been assigned and recorded, the certificates stood in the name Chauncey S. Churchill, executor of the will of Permelia S. Churchill, and all the securities were in a safe deposit box in a bank stamped "Property of Permelia S. Churchill." The gift was accompanied by a sufficient delivery and we must assume from the evidence and the terms of the reservation that the assignment was in proper form to pass the title to the executor.

As the securities transferred to his mother's estate did not belong to the testator and did not stand in his name when he died, and as the executors have paid to Mrs. Churchill one third of all the property which did belong to him and which stood in his name when he died, the decree of the Probate Court allowing the account should be affirmed; and it is

*So ordered.*