MABEL L. DOANE, administratrix, *vs.* ALMIRA H. DOANE.

Middlesex.   January 10, 1921. — March 7, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Bills and Notes,* Validity. *Mortgage,* Of personal property. *Husband and Wife. Equity Pleading and Practice,* Decree. *Evidence,* Competency.

A note and mortgage of personal property, given by a husband to his mother without consideration and for the purpose and with the intention of preventing his wife from reaching his property in any proceeding brought by her against him to secure her marital rights to support and maintenance, is void as against his wife.

A suit in equity by a woman as the administratrix of the estate of her husband against his mother to determine the validity of a promissory note and of a chattel mortgage, alleged to have been given by the intestate to the defendant, and the amount due thereon, was referred to a master, who found without reporting the evidence that at the time the note and mortgage were made the plaintiff and her husband were estranged from each other, that the note never was delivered to the defendant, that both instruments were given to the defendant "for the purpose of preventing himself from being harassed in business, so far as possible, by any hostile legal action that might be taken for, or on

behalf of, his wife," that, on the date of the note and mortgage, the intestate was indebted to the defendant in the amount of $103 only and "that there was no other consideration" for the instruments. A decree was entered in the Superior Court ordering a discharge of the mortgage upon payment of $103 and interest. The defendant appealed. *Held,* that

(1) The rational inference from the finding was that the giving of the mortgage was merely colorable and that it never was intended by the parties to vest in the defendant any rights thereunder;

(2) Although a decree should have been entered cancelling the mortgage, the defendant was not aggrieved by the decree entered, and, inasmuch as there was no prayer in the bill seeking such relief and the plaintiff did not appeal from the final decree, the decree should be affirmed.

In the above described suit certain evidence consisting of book accounts, check books and the slips kept by the intestate in accordance with a "McCaskey System," so called, was *held* properly to have been admitted for the purpose of showing the intestate's business and financial condition.

In the above described suit the admission of certain fire insurance policies covering the property described in the mortgage, which were found in the intestate's safe deposit box and were not made payable to the defendant as mortgagee in case of loss, was *held* not to have been erroneous.

In the above described suit the master permitted the plaintiff's daughter, who was employed by the deceased as a bookkeeper, to explain the "McCaskey System" used by the deceased. *Held,* that the evidence properly was admitted.

BILL IN EQUITY, filed in the Superior Court on November 4, 1918, by the administratrix of the estate of William J. O. Doane, the plaintiff's husband, against his mother, alleging that Doane on June 29, 1918, made a promissory note for $2,000 and a mortgage of personal property securing payment of the note and gave them to the defendant; and praying that it be determined whether the note and mortgage were valid and were given "for any valuable consideration, and the amount, if anything, said defendant is entitled to thereunder," that the defendant be restrained from foreclosing, assigning or transferring the note and mortgage "pending a hearing on the merits and the entry of a final decree in this case" and for other and further relief.

In the Superior Court the suit was referred to a master who, without reporting the evidence, made among other findings the following:

"On June 29, 1918, the deceased executed a chattel mortgage to the defendant, described in said mortgage as Mrs. George M. Doane, for $2,000, covering the photographic apparatus and appliances, and all other personal property used in the business at 661 Massachusetts Avenue, Arlington, household furniture at

10 Mt. Vernon Street, Arlington, and a Ford automobile. He also executed a note of the same date for $2,000, payable to Mrs. George M. Doane on demand, with interest at the rate of five per cent a year, to which note was attached a forty cent uncancelled Internal Revenue stamp. The mortgage was sent to the defendant by mail, and remained in her possession, and was put in evidence by her. The note was never delivered to the defendant, was produced and put in evidence at the trial by the plaintiff, and was found after the death of William J. O. Doane, by the plaintiff, as his administratrix, in the deceased's safety deposit vault at the Tanners National Bank, Woburn, Mass. At the same place was found two fire insurance policies, which were put in evidence by the plaintiff, issued to William J. O. Doane, one by the Phœnix Insurance Company for the amount of $1,500, and one by the Germania Fire Insurance Company for the amount of $300, which policies covered loss or damage by fire on photographic apparatus and supplies at 665–671 Massachusetts Avenue. I find that these policies were intended to cover the personal property used by the deceased in his photography business carried on at the premises described in the mortgage as 661 Massachusetts Avenue. No assignment or indorsement of the policies making them payable, in case of loss, to the defendant as mortgagee, was made by the deceased. . . .

"I find that the defendant advanced or loaned to the deceased on September 2, 1916, the sum of $180, and that said sum is the only sum of money that was advanced to, or loaned by, the defendant to the deceased; that the deceased repaid the defendant $77 of that amount in the form of cash and advances for the defendant's transportation, so that on June 29, 1918, the deceased owed the defendant the sum of $103 only, and that the defendant made no other advances to the deceased, and that there was no other consideration for the note and mortgage of June 29, 1918, than the fact that the deceased owed the defendant the said sum of $103 with interest at six per cent.

"I find that on June 29, 1918, the deceased was in good health, without any expectation of death, that he had determined no longer to live as a husband with the plaintiff, and that the note and mortgage for $2,000 executed in favor of the defendant, was given for the purpose of preventing himself from being harassed

in business, so far as possible, by any hostile legal action that might be taken for, or on behalf of, his wife.

"In making the foregoing finding, I was largely influenced by the cash books, ledgers, check books, and McCaskey System slips, hereinbefore referred to, all of which were admitted by me against the objection of the defendant, and subject to her exception. Those books were supported by testimony, which I find to be true, that they were, with few exceptions, in the handwriting of the deceased. The few exceptions were supported by the testimony of the person who made the excepted entries, as being made by him in the course of the deceased's business as an employee of the deceased for that purpose, and as being regularly made in the absence of the deceased. So far as the entries in the handwriting of the deceased are concerned, there was no evidence that they were regularly kept in the ordinary course of the defendant's business, except so far as the books themselves show that they were so kept. I ruled that I had the right to inspect said books, and to infer from such inspection that they were regular books of account, kept by the deceased in the course of his business, and covering his personal and business financial accounts, and I so infer. . . .

"The two fire insurance policies hereinbefore mentioned, were admitted in evidence by me against the defendant's objection and exception. The only evidence to support them was the testimony of the plaintiff, that they were found in the deceased's safety deposit box, and that they appeared of themselves to be Massachusetts standard fire policy forms, duly and properly issued to cover against loss from fire, the property belonging to the deceased, and used by him in his photography business.

"Ruth Beddoes Ross, the plaintiff's daughter, and a witness for the plaintiff, testified that she was employed by the deceased. Against the defendant's objection and exception, I permitted her to testify that in 1912, she began to devote her entire time to the deceased's business; that she did the bookkeeping and whatever was necessary, and that she became familiar with every department of the work. She thereafter testified to, and explained the method of the deceased's keeping of accounts under the McCaskey System hereinbefore referred to."

The defendant filed objections and exceptions to the master's report as follows:

"1. To the ruling of the master admitting in evidence the cash books, ledgers, check books and McCaskey System slips referred to in his report, on the ground that the evidence was incompetent, irrelevant, and immaterial, and that, as to part thereof, there was no evidence to show that the entries and books were made and kept in the regular course of business of the plaintiff's intestate.

"2. To the ruling of the master that he had any right to draw any inference from the evidence described in the first objection, because such evidence was incompetent, irrelevant and immaterial.

"3. To the inference drawn by the master as to some of the memoranda and books described there, that they were 'regular books of account' kept by the deceased in the course of his business; and covering his personal and business financial accounts; for that an inspection of such evidence, before the court upon the master's statement on page 10 of the report incorporating them, shows that such inference is unwarranted as to books or memoranda material to this suit.

"4. To the ruling of the master in admitting the policies of insurance referred to on page 10 of his report, upon the ground that such evidence was immaterial, irrelevant and incompetent to this suit.

"5. To the testimony of Ruth Beddoes Ross referred to on page 11 of the master's report, upon the ground that such testimony was irrelevant, immaterial and incompetent.

"6. To the failure of the master to rule as requested in 12, in that the master, as shown by page 10 of his report, gave weight to such negative proof without being satisfied that the books contained all transactions between the plaintiff and the defendant.

"7. To such finding of facts made by the master as are material in this suit, for the reason that such findings are based wholly upon evidence in its nature documentary, that is to say, upon the cash books, ledgers, check books, McCaskey System slips, deposition and interrogatories, and that such findings are in no way dependent upon the appearance, manner of testifying or conduct of witnesses who testified orally before the master, and that such documentary evidence does not justify those findings."

Other material allegations of the bill and findings of the master are described in the opinion.

The suit was heard by *Fox*, J., upon the plaintiff's motion that the defendant's exceptions to the master's report be overruled and the master's report confirmed, and also upon motion of the defendant to have the report recommitted to the master. An interlocutory decree was entered by order of the judge denying the defendant's motion to recommit, overruling the defendant's exceptions and confirming the master's report, and later by order of *Sanderson*, J., a final decree was entered whereby it was ordered that, upon payment or tender by the plaintiff to the defendant or her attorney of the sum of $103 and interest, the defendant should forthwith sign, seal, acknowledge and deliver to the plaintiff a discharge of the personal property mortgage above referred to, and that, in case of default of such payment, the bill should be dismissed. The defendant appealed.

The case was submitted on briefs.

*G. F. James*, for the defendant.

*R. E. Buffum*, for the plaintiff.

CROSBY, J. This is a bill in equity brought by the plaintiff as administratrix of the estate of her late husband, William J. O. Doane, against the defendant, who is the mother of the intestate, for the purpose of determining the validity of a note and mortgage given by the intestate to the defendant, the consideration therefor, and the amount, if anything, due thereon.

The bill alleges in substance that when the note and mortgage were given, and for some time previously, the relations between the intestate and his wife "were strained;" and that shortly after the note and mortgage were given, a separation took place, through no fault of the wife, and that the parties did not live together afterwards. The bill further alleges that the note and mortgage were without consideration; that they were given, in anticipation of possible legal proceedings which might be brought against the intestate by his wife, for the purpose of preventing her from obtaining the property covered by the mortgage; and, in case of his decease, from securing her rights as widow. The master found upon the evidence, which is not reported, that the note was never delivered to the defendant and was found, after the death of the intestate, by the plaintiff in his safe deposit box in the bank; that the note and mortgage were given to the defendant "for the purpose of preventing himself from being harassed

in business, so far as possible, by any hostile legal action that might be taken for, or on behalf of, his wife." We construe this language as a finding that the note and mortgage were given by the deceased to his mother for the purpose, and with the intention, of preventing his wife from reaching his property in any proceeding brought by her against him to secure her marital rights to support and maintenance. The conveyance by the husband so made is void as against her. *Livermore* v. *Boutelle,* 11 Gray, 217. *Chase* v. *Chase,* 105 Mass. 385. *Brownell* v. *Briggs,* 173 Mass. 529. *Leyland* v. *Leyland,* 186 Mass. 420, 422. *Purdon* v. *Blinn,* 192 Mass. 387. *Shepherd* v. *Shepherd,* 196 Mass. 179, 182. The rational inference from the finding is that the giving of the mortgage was merely colorable; that it was not a real conveyance, and never was intended by the parties to vest in the defendant any rights thereunder. The conclusion reached is not at variance with the decisions in *Leonard* v. *Leonard,* 181 Mass. 458, *Kelley* v. *Snow,* 185 Mass. 288, and *Redman* v. *Churchill,* 230 Mass. 415, 418. While a decree properly should have been entered cancelling the mortgage, yet inasmuch as there is no prayer in the bill to that effect, and the plaintiff has not appealed from the final decree, which directs that the sum of $103 and interest be paid by her to the defendant (being the balance due to her, as the master finds, on account of a loan of $180 made by her to the intestate), the defendant is not, therefore, aggrieved by the decree.

The books of accounts, check books and the slips kept by the intestate in accordance with the so called "McCaskey System," all introduced for the purpose of showing his business and financial condition, were admissible. The admission of fire insurance policies covering the property described in the mortgage, and which were not made payable to the defendant as mortgagee in case of loss, was not erroneous; the evidence had some tendency to show that the conveyance was voluntary and fraudulent. The evidence of the witness Ross, who was employed by the intestate as his bookkeeper, was properly admitted. There was no error in entering the interlocutory decree overruling the exceptions to the master's report and confirming the report.

*Decree affirmed with costs.*