JOHN FARR, JR., & others *vs.* HAROLD R. FRATUS.

Norfolk.     October 8, 1931. — December 2, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Sale. Frauds, Statute of. Stockbroker.*

In the declaration in an action of contract, the plaintiff, a stockbroker, alleged that the defendant directed him to purchase a certain number of shares of stock of a certain corporation and promised to pay the plaintiff therefor, and that he broke the contract. The evidence at the trial was that an employee of the plaintiff on the telephone stated to the defendant that he would like to sell him some of the stock at a certain price, and that there was some talk of deferred payment, to which they agreed, and that the employee stated, "All right, then, I will take down for you fifty shares at the selling price" agreed upon; that the plaintiff owned no such stock on that date, but purchased it

and paid for it the next day; and that an entry was made upon the plaintiff's books of fifty shares sold direct to the defendant and there was sent to the defendant a confirmation slip containing, in part, these words: "We confirm sale to you of" the shares at the price stated. The defendant later denying that he had bought the stock, the plaintiff sold it and sought to recover the difference between what he had paid and the proceeds of his sale, with interest. There was no evidence indicating that any broker's commission was charged. The defendant pleaded the statute of frauds. *Held*, that

(1) The only construction that could be put upon the evidence was that the plaintiff contracted to sell the stock to the defendant, and not that the defendant employed the plaintiff as his broker;

(2) The statute of frauds barred the action.

CONTRACT. Writ dated December 23, 1929.

The declaration was in two counts. In the first count the plaintiffs alleged that the defendant on October 7, 1929, "directed the plaintiffs to purchase for him" fifty shares of Incorporated Investors at a price of $77 per share "and the defendant agreed to pay the plaintiffs for said stock," with averments of performance by the plaintiff and of breach by the defendant. The second count was upon an account annexed, item one of which was: "Oct. 7, 1929 Bought 50 shs Incorporated Investors $3850.00." Items two and three were interest items amounting to $41.53. Item five was "Dec. 5, 1929 Sold 50 shs Incorporated Investors $2623.00." Item six was "Balance due $1268.53." The defendant's answer, besides a general denial and an allegation of payment, set up the statute of frauds.

The action was tried in the Superior Court before *Dillon,* J. Material evidence is stated in the opinion. A motion by the defendant that a verdict be ordered in his favor was denied. There was a verdict for the plaintiffs in the sum of $1,356.47. The defendant alleged exceptions.

*L. Rubin,* for the defendant.

*H. B. Cabot,* for the plaintiffs.

SANDERSON, J. This is an action of contract to recover a balance alleged to be due on the purchase and sale of fifty shares of the common stock of "Incorporated Investors." The answer set up the statute of frauds as one of the defences. The trial judge denied the defendant's

motion for a directed verdict and the jury found for the plaintiffs.

The only witnesses called were two employees of the plaintiffs. One of them testified that the plaintiffs are brokers dealing in stocks and bonds, that shortly before October 7, 1929, he sold the defendant some securities, and on the latter date he called the defendant by telephone and said, referring to stock of "Incorporated Investors" which he had been trying to sell him, "this stock that we had been previously discussing was then 77 and I was very sure it would be up the following day, and I would like to sell him some at that price of 77." After some talk the defendant said he would like to buy it and agreed to take fifty shares, but said that he could not pay for it at once but thought he could do so within a week. The witness stated that he had no authority to grant credit but would take that question up with his office; that later on the same day he called the defendant and said that he had spoken to his employers and they said the defendant could pay for the stock within ten days, and that the defendant expressed his satisfaction with this arrangement. The witness then said: "All right, then, I will take down for you fifty shares at the selling price of 77," and to this the defendant assented; that the witness then wrote out a sales slip and turned it over to the bookkeeper, that two weeks later he telephoned the defendant asking for payment, and the defendant then denied that he had bought the stock. The other witness called testified that he was cashier and in charge of the books of the plaintiffs; that their records show that on October 7 the plaintiffs owned no stock of Incorporated Investors, but on that date a purchase of fifty shares of the stock was made for the defendant for which the plaintiffs paid the next day; that the entry was of fifty shares sold direct to the defendant; that a confirmation slip was sent to the defendant, dated October 7, 1929, containing, in part, these words: "We confirm sale to you of 50 Incorporated Investors, 77," that a confirmation slip containing similar terms but stating October 8 as the date of sale was sent on October 14, 1929;

that the defendant did not pay for the stock and it was sold by the plaintiffs in the open market on December 5, 1929, at $52.50 per share.

The question in the case is whether upon the evidence the contract was one of purchase and sale and therefore within the statute of frauds, or whether it could have been found to be a contract by which the defendant employed the plaintiffs as his brokers. The contract upon which the plaintiffs must rely was made by the telephone conversation. It did not appear that the defendant knew whether the plaintiffs owned any stock at the time the contract was made or that knowledge concerning that matter could affect his right to rely upon the contract which he made. In the telephone conversation nothing was said to indicate that the plaintiffs were being employed by the defendant as brokers to buy the stock for him. The only construction which could reasonably be put upon what was said was that the plaintiffs contracted to sell the stock to the defendant. The testimony as to the record of a direct sale and the confirmation slips point to the same conclusion. They refer to the transaction as a sale and there is nothing to indicate that any broker's commission was charged. A contract to sell shares of stock is a contract to sell a chose in action within the meaning of G. L. c. 106, § 6. *Davis* v. *Arnold*, 267 Mass. 103, 109. The defendant's motion for a directed verdict should have been allowed.

*Exceptions sustained.*
*Judgment for the defendant.*