JOSEPH J. BODELL & others *vs.* FRANK D. SAWYER.

FRANK D. SAWYER *vs.* JOSEPH J. BODELL & others.

Suffolk.    October 11, 1935. — June 29, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Agency*, What constitutes. *Sale*, What constitutes. *Stockbroker*. *Contract*, What constitutes, Construction, Performance and breach. *Evidence*, Extrinsic affecting writing, Admissions, Relevancy, Business records. *Frauds, Statute of*. *Practice, Civil*, Requests, rulings and instructions, Variance, Exceptions. *Tender*. *Words*, "Buy," "Sale to you."

Evidence, at the trial of an action by a firm doing business as an "investment house" against a customer for the cost of certain stock and a broker's commission which the defendant refused to pay in breach of an alleged contract by the defendant to employ the plaintiffs in the purchase of certain stock for him, which included a memorandum by the plaintiffs of proposed transactions, a conversation between the defendant and a salesman employed by the plaintiffs and a confirmation slip, did not require a ruling that the plaintiffs acted as principals in a sale of the stock to the defendant, but warranted a finding that in the transaction the plaintiffs acted as agents for the defendant.

A confirmation slip, sent by investment brokers to a customer, reciting that they confirmed "the sale to you" of certain stock, could not rightly have been found to embody all the terms of a contract between the parties which included other transactions, so as to make parol evidence of the real nature of the contract inadmissible; nor in the circumstances was it an admission binding on the brokers that the transaction was a sale by them to the customer, rather than a purchase by them as agents of the customer, there being other evidence showing that the words "the sale to you" were not necessarily inconsistent with a relation of agency.

If a transaction between investment brokers and a customer was a purchase of stock by them as his agents, not a sale by them to him, it was not within the statute of frauds, G. L. (Ter. Ed.) c. 106, § 6.

The evidence warranted a finding that an order given to investment brokers by a customer to purchase stock, though not stated to be "good until cancelled," was properly executed if a purchase was made within two days.

It appearing that a customer had repudiated a contract with investment brokers under which they had purchased stock for him, no tender of the stock to him was required as a condition precedent to their right to maintain an action against him for the purchase price and their commission.

Questions of pleading and of variance are not open in this court on an exception by the defendant to a refusal by the trial judge of a request for a ruling that "upon the evidence the plaintiff cannot recover as a matter of law."

Upon an exception to a refusal of a requested ruling at the trial of an action of contract, that "upon the evidence" the plaintiff could not recover "as a matter of law," a contention which bore only on the issue of damages was not open.

"Record slips" in the office of a firm conducting business as an "investment house," relating to a transaction between the firm and its representative in another city in connection with business of a customer, properly were admissible in evidence under G. L. (Ter. Ed.) c. 233, § 78, at the trial of an action of contract by the firm against the customer.

CONTRACT OR TORT. Writ in the Superior Court dated June 30, 1933; also an action of

CONTRACT by the defendant in the first action against the plaintiffs therein. Writ in the Superior Court dated June 30, 1933.

The two actions were heard together by *Donnelly*, J., without a jury. There was a finding for the plaintiffs in the first action in the sum of $1,291.83, and for the defendants in the second action. Sawyer alleged exceptions in both cases.

*A. Sigel*, for Sawyer.

*A. B. Comstock*, (*F. H. Free, Jr.*, with him,) for Bodell and others.

FIELD, J. These two actions of contract were tried together before a judge sitting without a jury. The first case is an action brought by persons doing business as Bodell and Company to recover from the defendant Sawyer under an alleged contract by which the defendant "employed . . . [the plaintiffs] to buy for him 200 shares of the Class A stock of the International Hydro-Electric System and agreed to pay them for the cost thereof and also a commission of twelve and one-half cents per share on the same for their services." The defendant answered by a general denial and by pleading payment and the statute of frauds. The second case is an action by Sawyer against the persons doing business as Bodell and Company to recover an alleged balance on an account between this plaintiff and these defendants. The judge found for the plaintiffs in the first case in the sum of

$1,291.83, and for the defendants in the second case. It was agreed at the trial that if the plaintiffs in the first case "are not entitled to recover for the purchase of any International Hydro-Electric stock, then the credit balance as set forth by the plaintiff Frank D. Sawyer in his declaration is a true and correct balance due to him by the defendant Joseph J. Bodell et al." The cases come before us on a combined bill of exceptions of Sawyer.

On conflicting evidence these facts could have been found: In January, 1931, Sawyer was indebted to Bodell and Company on prior stock transactions. Bodell and Company, an "investment house," had previously purchased stock "for Sawyer's account on credit." On or about January 14, Ross, a salesman for Bodell and Company, with the approval of the head of the firm, submitted to Sawyer, shortly before his departure for California, a memorandum of a plan with reference to Sawyer's account. The memorandum was in this form:

"*Sell*

| | | |
|---|---|---|
| 100 shs. Chrysler @ 17⅝ | | = 1762. |
| 200  "  Waldorf @ 23¼ | | = 4650. |
| 100  "  Com Credit A @ 35 | | = 3500. |
| | | 9912. |
| *Pay* B & Co present debit | | 7352. |
| *Cash* balance | | 2560. |
| *Buy* | | |
| 200 Int'l Hydro A @ 25 | | = 5000. |
| Leaving debit balance of | | $2500. |

against collateral of $5000. — (mkt value).

G. M. ROSS

O. K.

J. J. BODELL"

The substance of the conversation between the salesman and Sawyer when this memorandum was submitted to Sawyer, as testified by the salesman, a witness for Bodell and Company, was as follows: "I saw Mr. Sawyer in his office, and

called his attention to these either unpaid or partly unpaid items, and I said the firm was very anxious to have them taken care of, it being about the first of the year, around the first of the year, and I knew he was going away, and in order to help him get the account squared up I offered him a plan, I showed him a memorandum which I had previously discussed with Mr. J. J. Bodell, the head of the firm of Bodell and Company, and had received his O. K., his approval to put through, to Mr. Sawyer. I say approval because it was rather an irregular procedure for us to do, to do what I suggested in this memorandum, and Mr. Sawyer finally agreed that was the thing to do, and for me to go ahead and do it. That memorandum contained round prices that I thought we could get for the securities that he had with us, and round prices at about what I thought we could buy the securities, if we did feel to buy some of it in the market." "I told him this: that my firm at that time did not carry margin accounts and it took special permission from the firm to carry this rather indefinitely in the form of a collateral loan. That's the way it appealed to me, about a fifty per cent loan. I said that he would not be pressed for it until able to care for it. In fact I explained further as he had entailed a loss in the sale of some of these partly paid securities, that my purpose in doing this and getting Mr. Bodell to agree to it was to attempt to effect, as I reasonably thought would happen, a recovery of that loss if not a net profit, and that was my reason for this plan." Sawyer "finally agreed, 'All right, go ahead and do it. I can't put in any more time now, go ahead and do it.'" This salesman testified on cross-examination that "he was left with an authority around $25 to buy the Hydro-Electric stock."

Bodell and Company, through their representative in New York, bought one hundred shares of the stock in question on January 15, 1931, and one hundred shares on January 16, 1931. They sent to Sawyer at his Boston address, on January 16, 1931, a confirmation slip reciting that they confirmed *"the sale to you"* of one hundred shares of the stock in question at the price of "24 and com." and one hundred shares at "23⅜ and com." and, on January 17,

a statement of Sawyer's account in which he was debited with one hundred shares of the stock in question at $24 a share and a broker's commission of $12.50 and one hundred shares of this stock at twenty-three and three eighths dollars a share and a broker's commission of $12.50. There was no evidence that the confirmation slip or this statement came to the attention of Sawyer until fifteen or eighteen months later. No other statement of account was made by Bodell and Company to Sawyer for about one and one half years. The "street certificates" for the stock were not transferred to Bodell and Company until March 11, 1931, but were held for their account by their New York representative. In November, 1932, a salesman for Bodell and Company spoke to Sawyer of an unpaid balance and Sawyer said, "I can't do anything about it now." The salesman answered, "All right." Correspondence between Bodell and Company and Sawyer with respect to the stock in question followed in which Sawyer stated that he never gave the salesman any authority to buy two hundred shares thereof and would not pay for them. Thereafter, on December 24, 1932, the stock "was sold out to Bodell Co. at $5\frac{1}{4}$." There was no evidence of a tender of the stock by Bodell and Company to Sawyer at any time.

In the first case the defendant (Sawyer) made, among others, the following requests for rulings: "2. That upon the evidence the plaintiffs cannot recover as a matter of law. 3. That upon all the evidence the plaintiffs cannot recover, having not complied with the statute of frauds. 4. That the plaintiffs' confirmation slip is binding upon them as to the nature of the transaction. 5. That upon all the evidence the plaintiffs acted as principal rather than agent. . . . 8. That to the extent that the contract between broker and customer has been reduced to writing (plaintiffs' alleged confirmation slip) parol evidence rule is applicable and writing may not be varied by parol evidence." These requests were denied, request numbered 8 being denied because "not applicable to the facts." Other requests were granted. In the second case the plaintiff

(Sawyer) made the following request for a ruling: "Upon all the evidence the plaintiff requests the court to find for the plaintiff in the amount set forth in the plaintiff's declaration plus interest from January 16, 1931." This request was denied. The exceptions argued by Sawyer are to the denial of his requests for rulings and to the admission of evidence.

There was no error.

The primary contention of Sawyer is that the evidence did not warrant a finding of any contract between him and Bodell and Company, but that if there was any such contract it was for the purchase by Sawyer from Bodell and Company of the stock in question and not for the employment by Sawyer of Bodell and Company as his agents to purchase such stock for him and, consequently, that recovery by Bodell and Company in this case is barred by noncompliance with the statute of frauds.

The evidence warranted a finding that Sawyer employed Bodell and Company as his agents to buy the stock in question for his account and authorized them to hold it as security for the payment by Sawyer of the balance of the purchase price. See *Rice* v. *Winslow*, 180 Mass. 500, 502. The nature of the transaction was to be ascertained from the terms of the memorandum and the conversation between the salesman and Sawyer at the time the memorandum was submitted to Sawyer considered in the light of all the attendant circumstances. The word "Buy," as used in the memorandum, was at least reasonably susceptible of the interpretation that an order to Bodell and Company to buy the stock as agents for Sawyer for his account was contemplated rather than a purchase of the stock by Sawyer from Bodell and Company. And the instruction given by Sawyer to the salesman, acting for Bodell and Company, to "go ahead and do it" could have been found to mean that Bodell and Company were to do the things referred to in the memorandum, including buying the stock, rather than that Sawyer himself was to do them. Other evidence with reference to the substance of the conversation supports this view of the nature of the transaction. The language

used by the parties was not so clearly that of purchase and sale of the stock as was the language considered in *Farr* v. *Fratus*, 277 Mass. 346, of which the court said that the "only construction which could reasonably be put upon what was said was that the plaintiffs contracted to sell the stock to the defendant." Page 349. And though Bodell and Company are described in the evidence as an "investment house," and the salesman testified that "he was in the investment business selling securities" and had been employed by Bodell and Company "as a security salesman," there was evidence that Bodell and Company previously had bought stock for Sawyer's account on credit — a circumstance proper for consideration in interpreting the present agreement between the parties. *McNulty* v. *Whitney*, 273 Mass. 494, 501. Moreover, there was no evidence that Bodell and Company owned any of the stock in question or represented to Sawyer that they owned such stock to furnish support for a conclusion that the agreement between the parties was for the purchase and sale of the stock.

Whatever was the force of the confirmation slip as evidence of the nature of the transaction a finding was not warranted that it embodied all the terms of the agreement between the parties so as to make parol evidence of the terms of such agreement inadmissible. See *Picard* v. *Beers*, 195 Mass. 419, 427–428; *McNulty* v. *Whitney*, 273 Mass. 494, 501–502; *Farr* v. *Fratus*, 277 Mass. 346, 349. Nor was this confirmation slip an admission binding on the plaintiffs as to the nature of the transaction. Its nature was to be determined from all the evidence. And the words, "*the sale to you*," on such slip, especially when considered with the reference to a commission, were not necessarily inconsistent with an agency transaction. *McNulty* v. *Whitney*, 273 Mass. 494, 501–502. Furthermore, the fact that the "street certificates" were held by the New York representative of Bodell and Company for their account, and later transferred to them, did not preclude a finding that Bodell and Company were acting as agents for Sawyer. *Rice* v. *Winslow*, 180 Mass. 500, 502. *Hall* v. *Paine*, 224

Mass. 62, 72–73. Without further discussion of the evidence it is enough to say that a ruling was not required as matter of law that on all the evidence Bodell and Company acted as principals — that is, as sellers of the stock to Sawyer — rather than as Sawyer's agents to buy it. And an agency agreement such as could have been found to exist would not be within the statute of frauds. G. L. (Ter. Ed.) c. 106, § 6. *Picard* v. *Beers*, 195 Mass. 419, 428. For these reasons there was no error in refusing to rule in accordance with Sawyer's requests in the first case numbered 3, 4, 5 and 8. Since request numbered 8 was not applicable to any facts which could have been found on the evidence, the refusal thereof "as not applicable to the facts" was not open to the objection pointed out in *Mericantante* v. *Boston & Maine Railroad*, 291 Mass. 261, 263.

There was no error in refusing Sawyer's request numbered 2 in the first case for a ruling that "upon the evidence the plaintiffs cannot recover as a matter of law." In addition to contentions already considered Sawyer contends in support of this request (a) that if any order to buy the stock was given by him to Bodell and Company it was not properly executed by them, (b) that no cause of action would arise in favor of Bodell and Company until the stock was tendered by them to Sawyer and there was no evidence of such a tender, and (c) that according to the evidence the stock on December 24, 1932, was sold by Bodell and Company to themselves, as "they had no right to do," and there was no evidence of the market value of the stock or the fairness of the price. Error is not shown on any of these grounds. It was a warrantable inference from all the evidence that though the order was not in terms "good until cancelled" it was not, as contended by Sawyer, good only for the day on which it was given, and that the order was properly executed by the purchase of the stock within two days after such order was given. See *Lehan* v. *Draper*, 290 Mass. 524, 529. Furthermore, it could have been found that after Bodell and Company executed the order Sawyer repudiated his contract with Bodell and Company and refused to accept and pay for the stock. Proof of tender

of the stock to Sawyer after such a repudiation is not essential to a cause of action for damages for breach of the contract.  See *Davis* v. *Arnold,* 267 Mass. 103, 111, 112. See also *Bresky* v. *Rosenberg,* 256 Mass. 66, 74.  Compare *Brown* v. *Rushton,* 223 Mass. 80.  It is true that the declaration alleges tender.  But questions of pleading and of variance between allegations and evidence  are not open under this exception for the purpose of reversing the action of the trial judge.  *Allen* v. *Kilpatrick,* 277 Mass. 237, 241.  *Pacheco* v. *Medeiros,* 292 Mass. 416, 419.  Nor is Sawyer's contention with respect to the sale of stock by Bodell and Company to themselves and the fairness of the price open under this exception.  This contention bears only on the issue of damages — an issue not involved in the requested ruling — and would not affect the right of Bodell and Company to recover at least nominal damages from Sawyer for his breach of contract.  *Mills* v. *U. S. Slicing Machine Co.* 230 Mass. 95, 98.

There was no error in the admission, subject to Sawyer's exception, of the testimony on redirect examination of Boole, one of the partners of Bodell and Company, called by them as a witness, with respect to differences between the forms of confirmation slips used in principal transactions and those used in agency transactions.  Whether or not the testimony was admissible on independent grounds, at least it was admissible to explain the testimony of this witness on cross-examination.  *Bennett* v. *Susser,* 191 Mass. 329, 330. And the testimony of this witness, admitted subject to the same exception, that "there was the same distinction in the card records of Bodell & Co." was admissible to explain their records of the transaction with Sawyer.  See G. L. (Ter. Ed.) c. 233, § 78; *Pratt* v. *White,* 132 Mass. 477, 479; *Pettey* v. *Benoit,* 193 Mass. 233, 236;  *Doane* v. *Doane,* 238 Mass. 106, 112.  Nor was there error in the refusal, on motion of Sawyer, to strike out "record slips" of the transaction between Bodell and Company and their New York representative admitted conditionally.  The witness Boole testified that these cards were the "Bodell & Company office cards showing the execution of the alleged order." On findings which the judge might have made they were

admissible under G. L. (Ter. Ed.) c. 233, § 78, as Bodell and Company's records of the transaction. *Chadwick & Carr Co.* v. *Smith*, 293 Mass. 293, 295.

It follows from what has been said with respect to the rulings in the first case that it was not error to refuse Sawyer's request for a ruling in the second case. Sawyer was not entitled to this ruling on the basis either of the agreement of the parties or of evidence in the case binding on Bodell and Company.

The exceptions of Sawyer in each case are overruled.

*So ordered.*