ELIZA W. LEONARD *vs.* ISABELLA S. LEONARD.

Norfolk.   March 18, 1902. — May 22, 1902.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Husband and Wife.   Deed,* Validity.   *Fraud.*

A deed of real estate, reserving a life estate in the grantor, made by a husband principally for the purpose of depriving his wife of her statutory share in his estate, but also given in consideration of care bestowed and to be bestowed upon the grantor as long as he lives, is valid against the grantor's widow. *Brownell* v. *Briggs,* 173 Mass. 529, explained.

BILL IN EQUITY, filed November 17, 1899, and amended January 1 and May 10, 1900, by the widow of George E. Leonard, late of Foxborough, to set aside a conveyance of real estate made by her late husband to James W. Leonard, his nephew since deceased, and gifts of personal property made to the defendant then the wife and now the widow of James.

The Superior Court made a decree affirming a master's report, declaring, that the deed from George E. Leonard to James W. Leonard was given without consideration as against the plaintiff and in fraud of her rights, and was void as against her, also, that the gifts of personal property to the defendant were for the same reason fraudulent and void as against the plaintiff, and making orders accordingly.   The defendant appealed.

The following facts appeared from the master's report:

The plaintiff and her late husband, George E. Leonard, were married in 1851, and lived after their marriage in Foxborough. They had no children, and he died November 4, 1894, intestate and without issue.   On July 29, 1892, George E. Leonard conveyed the premises in question, of the value of $2,500, his only real estate, except a wood lot of the value of about $100, and his burial lot in the cemetery, to James W. Leonard, his nephew, the late husband of the defendant.   This deed was dated July 29, 1892, and was recorded on May 21, 1894.   It reserved to the grantor, "the use, occupation and control" of the granted premises during the term of his natural life. . The consideration expressed in the deed was "one dollar and other valuable considerations."

The relations between the plaintiff and her husband were very pleasant up to 1880, when an estrangement arose between them that continued until his death. After 1886 her husband furnished her with no supply of food. The defendant and her husband lived on the same street with, and near, the plaintiff and her husband, and knew of the unpleasant relations between them.

The social relations between the defendant and the plaintiff's husband during the last ten years of his life were very intimate and confidential. During this time the plaintiff and the defendant were not on speaking terms and had no social relations with each other.

In July, 1892, the plaintiff's husband was seriously ill and refused to allow the plaintiff to do anything for him. He then told James W. Leonard that if he and the defendant would take care of him he would see that they were well paid, but nothing then was said about the sum to be paid, or how or when they should be paid. On July 29, 1892, without consulting with James W. Leonard, or the defendant, and without the knowledge and consent of the plaintiff, he executed the deed in question and delivered it to James W. Leonard, telling him at the same time that it was in remuneration for what they had done and were to do for him.

James W. Leonard and the defendant performed the services requested, and on April 27, 1894, the plaintiff's husband went to James W. Leonard's to live, and lived there until October 24, 1894, when he was taken to the hospital, where he died on November 4, 1894. The plaintiff's husband was seventy years old at the time of his death. He had been in failing health for several years, and after July 29, 1892, said in substance to several people that he had arranged things so that his wife would get none of his property after his decease.

In regard to a gift of $975, held by the court to be good, the defendant testified, that Merton S. Leonard was her son, that he had been obliged to have his hand amputated, and that the gift was made out of sympathy by George E. Leonard, who said, " I shall do something for Merton, for he will be handicapped all his days by the loss of that hand. I am going to give him $1,000, but I cannot give it to him because he is a minor, and I will give it to you to put in the bank for him."

In regard to the $1,000 standing in the name of the defendant, held by the court not to be sustained as a gift, the master found, that on April 2, 1888, George E. Leonard had a deposit account in the New Bedford Institution for Savings, amounting to $1,400.12, and on this date drew out $1,395.12, leaving a balance of $5 to his credit on his account. On the same date there was deposited in the defendant's name in the same institution $1,000, which had been transferred or drawn out from this account. No portion of this $1,000 account standing in the name of the defendant was drawn out during the lifetime of George E. Leonard. After his death the $1,000 account was closed by the payment of $100 on October 11, 1895, and of $1,284.08 on June 3, 1896, on orders of the defendant.

*F. H. Williams*, for the defendant.

*J. Everett*, for the plaintiff.

HOLMES, C. J. This is a bill to set aside a conveyance of land and certain gifts of personal property on the ground that they were made by the plaintiff's husband for the purpose of defrauding her of the interest that she would have taken upon his subsequent death intestate and without issue. Pub. Sts. c. 124, § 3 ; c. 135, § 3. The master found that the principal purpose was as alleged, the other consideration of the deed being the care bestowed and to be bestowed upon the grantor as long as he lived, and that the conveyance and gifts were void as against the plaintiff although the deed at least was made upon a consideration good against every one else. We see no reason for revising his findings except as explained hereafter, and the only question which we shall discuss is whether the facts stated warrant the conclusion of law, or in other words whether this case is within the decision of *Brownell* v. *Briggs*, 173 Mass. 529.

In the form in which *Brownell* v. *Briggs* came before the court, it necessarily was assumed that the deed there passed upon was a serious instrument operating according to its tenor except so far as the demandant's rights prevented. Therefore that decision does not stand upon the ground that the deed was understood by the parties to be an empty form got up to frighten the wife, although there was good reason to believe it, or that it was intended to be a testamentary instrument in disguise. See *Walker* v. *Walker*, 66 N. H. 390, 391, 395. By the form of the deed the

title passed to the tenant in the grantor's lifetime, so that it could not be said that the latter died seised. See *Hatcher* v. *Buford*, 60 Ark. 169, 174, 181. But it was not decided or implied, of course, that there was any right on the part of the wife that the husband should hold all land that he owned at any time during marriage until his death, or any duty on the part of the husband not to sell or to give his land away in a transaction which was not aimed at the wife. *Lightfoot* v. *Colgin*, 5 Munf. 42. *Sanborn* v. *Goodhue*, 28 N. H. 48. *Cameron* v. *Cameron*, 10 Sm. & M. 394. As a husband can convey property notwithstanding his foresight of the effect of his conveyance upon his wife, the question arises to what extent his motive can make a difference. Ordinarily, except in cases under statutes or in determining the extent of a privilege to infringe upon the admitted right of another, motive does not affect the validity of a transaction in this Commonwealth, and it does so even less in England. Cases are not in point where there is a right irrespective of the motive, such as that of creditors against conveyances manifestly defeating their power to collect their debts.

It is obvious that the decision in *Brownell* v. *Briggs* must be read with an eye to the precise facts on which it arose. That case certainly was not intended to decide that any and every otherwise valid transaction was bad into which a jury should find that there entered the motive of dislike for the grantor's wife, or even every one in which dislike for his wife predominated over love for his neighbor or desire for gain. *Wood* v. *Bodwell*, 12 Pick. 268. In *Brownell* v. *Briggs* the conveyance was a voluntary conveyance, unrecorded and left in the grantor's possession, which reserved to the grantor not only the right to use and occupy the land as he saw fit, but also the " power and authority to sell or convey the said premises in fee simple or in mortgage, and to dispose of the proceeds as I shall see fit." From the technical point of view such a conveyance does not quite take back all that it gives, but practically it does. *Welsh* v. *Woodbury*, 144 Mass. 542, 545. And the court decided that it was not enough to displace the right of the wife.

But in the case at bar no such power was reserved. The conveyance was an out and out conveyance of the fee subject to a life estate, and consideration was given for it in the support

of the grantor. Under such circumstances, apart from special statutes such as governed the decisions in *Littleton* v. *Littleton*, 1 Dev. & Bat. 327, 332, *Reynolds* v. *Vance*, 1 Heisk. 344, 345, *Jiggitts* v. *Jiggitts*, 40 Miss. 718, the great weight of authority is that the intent to defeat a claim which otherwise a wife might have is not enough to defeat the deed. *Holmes* v. *Holmes*, 3 Paige, Ch. 363. *Stewart* v. *Stewart*, 5 Conn. 317, 321. *Pringle* v. *Pringle*, 59 Penn. St. 281, 285. *Lines* v. *Lines*, 142 Penn. St. 149. *Padfield* v. *Padfield*, 78 Ill. 16, 18. *Small* v. *Small*, 56 Kans. 1, 12, 16. *Richards* v. *Richards*, 11 Humph. 429. *Smith* v. *Hines*, 10 Fla. 258, 286. *Hatcher* v. *Buford*, 60 Ark. 169, 180. *Williams* v. *Williams*, 40 Fed. Rep. 521, 522. See *Hays* v. *Henry*, 1 Md. Ch. 337, 340 ; *Dunnock* v. *Dunnock*, 3 Md. Ch. 140, 147. We are of opinion that the deed must be upheld.

With regard to the personal property, the finding of the master presumably was based upon the assumption manifestly made by him that the whole case was covered by *Brownell* v. *Briggs*. We see no sufficient reason why the transfer of $975 to an account that read "Isabella S. Leonard in trust for Merton S. Leonard" should not stand. The form of the transfer corroborates the oral evidence and makes it unlikely that the gift was a mere cover and that the donor retained control of the fund. As to the $1,000 standing in the name of the defendant the case is different. No portion of this was drawn in George E. Leonard's life, and, taking into account his motive and the unsatisfactory character of the evidence in support of the gift, we think it well may have been proved that this transfer was only illusory and was not understood to be effectual between the parties.

*Decree accordingly.*