STATE STREET TRUST COMPANY *vs.* TREASURER AND RECEIVER GENERAL.

SAME *vs.* EDWARD FRIEBE & another.

Suffolk. May 15, 1911. — June 21, 1911.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Tax,* On legacies and successions. *Inheritance Tax.*

A transfer of property by a trust deed may have been "made or intended to take effect in possession or enjoyment after the death of the grantor" and thus be subject to a succession tax under St. 1909, c. 490, Part IV. § 1, although the grantor reserved no power of revocation, unless the property passed to the beneficiary with all the attributes of ownership independently of the death of the grantor.

In order to bring a transfer by a trust deed, which is made or intended to take effect in possession or enjoyment after the death of the grantor, within the exception contained in St. 1909, c. 490, Part IV. § 1, of "cases of a *bona fide* purchase for full consideration in money or money's worth," so as to exempt the transfer from the payment of a succession tax, it is not enough that there should have been a valuable consideration, but the consideration also must have been adequate, and, if it consisted of services rendered to the grantor, their value may be inquired into, in a suit in equity by the trustee for instructions as to whether the tax should be paid, for the purpose of ascertaining whether the services rendered fulfil the requirement of the statute by equalling or exceeding in "money's worth" the value of the property transferred.

A widow advanced in years and in feeble health desired to secure during her life the services and companionship of a certain man, fifty-four years of age, who was employed as a travelling salesman at a salary of $2,200 a year in addition to his travelling expenses. In consideration of his resigning this position and removing with his wife to the widow's residence, where they continued to live and to care for her until her death, the widow deposited with a trustee $100,000, face value, of three and one half per cent bonds of the Com-

monwealth of Massachusetts, with a declaration of trust directing the trustee to pay the income during her life in equal shares to the man and his wife, and upon her death to transfer the bonds to them in equal shares absolutely if they both survived her, or, in case at the time of the settlor's death either of the beneficiaries should be dead, to transfer the whole of the bonds to the survivor, or, in case the settlor should survive both the beneficiaries, then at her death to transfer one half of the bonds as one of the beneficiaries should have appointed by his will and the other half as the other beneficiary should have appointed by her will, or in default of appointment by either of them, to his or her next of kin. At the time of the settlor's death, the bonds had an actual market value of not less than $90,000. Upon a bill in equity by the trustee for instructions, it was *held*, that the transfer of the bonds under the deed of trust did not constitute " a *bona fide* purchase for full consideration in money or money's worth" within the exception contained in St. 1909, c. 490, Part IV. § 1, and consequently that the transfer was subject to a succession tax under that statute.

Two BILLS IN EQUITY for instructions, filed in the Probate Court for the county of Suffolk on July 21, 1910, by the State Street Trust Company, a corporation, which had received on January 19, 1910, $100,000, in face value, of registered bonds of the Commonwealth of Massachusetts from Annie Preston Lincoln of Boston, indorsed in blank by her, to be held by the plaintiff in trust under an instrument in writing of that date, the instructions sought being as to whether it was the duty of the plaintiff to pay any tax to the treasurer and receiver general of the Commonwealth under St. 1907, c. 563, codified in St. 1909, c. 490, Part IV.

The instrument creating the trust was as follows:

" Know all men by these presents

" That Whereas I, Annie Preston Lincoln of Boston, in the County of Suffolk, and Commonwealth of Massachusetts, have this day transferred to the State Street Trust Company of said Boston, one hundred thousand dollars, ($100,000.00) face value of the three and one-half per cent (3 1/2%) bonds of the Commonwealth of Massachusetts, as Trustee.

"And Whereas Edward Friebe of Cohasset, Massachusetts, has this day agreed with me that he will resign from his position as an employee of the S. S. Pierce Company within ninety (90) days from the date hereof, and has this day paid to me one dollar and other valuable considerations.

" Now Therefore, I direct my Trustee to hold the said bonds on the following trusts, to wit: To pay the income thereof dur-

ing my life to the said Edward Friebe and his wife Abby
Frances Friebe, in equal shares semi-annually or oftener as it
may seem fit; and on my death I direct my trustee to transfer
said bonds to said Edward Friebe and his said wife in equal
shares absolutely, and in case at the time of my death one of
said Edward Friebe and his said wife should be dead, to transfer
the whole of said bonds to the survivor; and in case I should
survive both the said Edward Friebe and his said wife, then at
my death to transfer one-half of said bonds as said Edward
Friebe may have appointed by will, and in default of said ap-
pointment, to his next of kin living at my death, by right of
representation, and one-half of said bonds as said Abby Frances
Friebe may have appointed by will, and in default of said ap-
pointment to her next of kin living at my death, by right of
representation. If such bonds should reach maturity before my
death, I direct my Trustee to reinvest and hold the proceeds on
the same trusts as hereinbefore specified in regard to said bonds.

" In Witness Whereof I have hereunto set my hand and seal
this 19th day of January, 1910.

" Annie Preston Lincoln."

Annie Preston Lincoln died on May 6, 1910. It was alleged
in the bills and admitted in the answers that at the time of the
death of Annie Preston Lincoln the bonds "had an actual mar-
ket value of not less than $90,000." Edward Friebe and Abby
Frances Friebe, who were the beneficiaries of the trust, denied
that any inheritance tax was due to the Commonwealth upon
the bonds.

On January 31, 1911, *Grant,* J., made a decree, which con-
cluded as follows : " It appearing that the deed or grant of the
property in question by Annie Preston Lincoln was a deed or
grant to take effect in possession and enjoyment after the death
of the said Annie Preston Lincoln, but that said deed or grant
was a *bona fide* purchase for full consideration in money or
money's worth, it is ordered and decreed that said bonds are not
subject to any tax under the provisions of law relative to the
taxation of legacies and successions."

The treasurer and receiver general appealed from so much of
the decree as ordered that the bonds were not subject to any tax,
and Edward Friebe and Abby Frances Friebe appealed from so

much of it as ruled that the deed or grant was one to take effect in possession and enjoyment after the death of Annie Preston Lincoln.

In the Supreme Judicial Court, an agreed statement of facts was submitted in substance as follows :

The instrument dated January 19, 1910, printed above, was recorded in the Suffolk registry of probate. The following was indorsed upon it: " Boston, January 19, 1910. In consideration of the aforesaid Declaration of Trust, I, Edward Friebe, hereby agree to resign from my business position as an employee of the S. S. Pierce Company within ninety days from this date. Edward Friebe."

In the early part of October, 1909, the defendants Edward Friebe and Abby Frances Friebe, at the request of Mrs. Annie Preston Lincoln, established their home with her in her house, numbered 338 on Commonwealth Avenue in Boston. Mrs. Lincoln for more than ten years had been in feeble health, and was then absolutely confined to the house. Friebe was employed as a travelling salesman for the S. S. Pierce Company and more than four fifths of his time was occupied in journeys which kept him away from home at night. Mrs. Lincoln frequently expressed a desire to Friebe that he should give up his travelling employment, so that she could rely at all times on having him staying in the house in case of any emergency for which she might need him. Friebe told Mrs. Lincoln that he was not in a position to retire, and " he states that it was in order to enable him to give up his position and remain at home that Mrs. Lincoln offered to make the transfer of bonds which was completed by the deed of trust of January 19, 1910."

In accordance with his agreement, about January 25, 1910, Friebe offered his resignation orally to W. L. Pierce, president of the S. S. Pierce Company, to take effect on April 1, 1910, seventy-two days after the date of the deed of trust, and thereby completing exactly twenty-one years of service with the company. On March 31, 1910, Friebe received his last pay from the S. S. Pierce Company in the form of a check for $166.66, and thereupon his connection with the firm ceased. He was then fifty-four years of age and in good health. As to the permanence of Friebe's employment, Wallace L. Pierce, president

of the S. S. Pierce Company, made the following statement: "Mr. Edward Friebe was in our employ for upwards of twenty years. During all that time his services were entirely satisfactory. We have no reason to think that he would not have remained with us indefinitely, if he had not resigned his position of his own accord. In fact we were very sorry to have him leave."

For about eight years previously and up to the time of his retirement, Friebe received a salary of $2,200 a year, and, in addition to his salary, was reimbursed for his travelling expenses, which, for the year ending March 31, 1909, amounted to the sum of $2,276.86, and for the year ending March 31, 1910, amounted to the sum of $2,213.63, making the total sum received from the S. S. Pierce Company in 1909, $4,476.86, and in 1910, $4,413.63. It was agreed that Friebe would testify that his position was worth to him, substantially, $3,500 per annum.

From the time that his resignation went into effect Friebe resided continuously at No. 338 Commonwealth Avenue with Mrs. Lincoln until the date of her death, at the age of seventy-three, on May 6, 1910.

It was agreed that the "American Experience Tables" might be referred to as if incorporated in the agreed statement of facts. Upon these tables the value of a life interest in $100 in a person fifty-four years of age was $46.51.

Neither Edward Friebe nor Abby Frances Friebe was related to Mrs. Lincoln. Mrs. Friebe was a cousin of the late husband of Mrs. Lincoln.

The appeals came on to be heard by *Loring*, J., who ordered that the two cases be heard together and reserved them for determination by the full court upon the bills, answers, decrees, claims of appeal, objections to the decrees and the agreed statement of facts, such order to be entered as law and justice might require.

The cases were submitted on briefs.

*J. M. Swift*, Attorney General, & *F. T. Field*, Assistant Attorney General, for the Treasurer and Receiver General.

*J. G. Forbes*, *F. J. Stimson* & *L. M. Stockton*, for Edward Friebe and Abby Frances Friebe.

BRALEY, J. The question presented by these cross appeals

is, whether the bonds held in trust by the plaintiff are subject to a succession tax under St. 1907, c. 563, § 1, now by codification St. 1909, c. 490, Part IV. § 1.   The tax imposed is not upon the property itself, although its value is made the basis of taxation, but on the right of transmission, where under the deed, grant or gift the property is not to vest in possession or enjoyment until after the death of the grantor, donor or settlor, or, if not expressed, such intention is found.   *Emmons* v. *Shaw*, 171 Mass. 410, 413.   St. 1909, c. 490, Part IV. § 1.

It is the first contention of the defendants in the second appeal, who are the beneficiaries under the trust, that they are exempt, as the transfer of the property in question became complete in the lifetime of the donor or settlor.   By the terms of the instrument creating the trust no power of revocation is reserved.   The test, however, by which the exemption is to be ascertained does not depend upon whether a power to revoke has or has not been inserted, but upon the passing of the property with all the attributes of ownership independently of the death of the transferror. It is the absence of the power of control with the unrestricted right of the recipient to dispose of the property and to receive and use the proceeds, which by the express language of the statute subjects it to the tax.   *Crocker* v. *Shaw*, 174 Mass. 266, 268.   *New England Trust Co.* v. *Abbott*, 205 Mass. 279, 282. *Matter of Brandreth*, 169 N. Y. 437, 442.   *Vanderbilt* v. *Eidman*, 196 U. S. 480, 493.   The defendants were to receive the income of the bonds in equal shares, and neither they nor their respective donees, if the power of appointment was exercised, nor their respective next of kin, if it was not exercised, were to receive the principal until the death of the settlor.   If the income was payable to them, the intention of the settlor is plain, that the principal, even if it vested in title, was not to vest in possession and enjoyment during her life, and the defendants have failed to bring themselves within this exception.   *Crocker* v. *Shaw*, 174 Mass. 266.   *New England Trust Co.* v. *Abbott*, 205 Mass. 279.

The declaration of trust makes no reference to any consideration, and on its face the transfer was a gift.   But from the agreed facts it appears that the settlement was made because the settlor, Annie Preston Lincoln, who was advanced in years

and in feeble health, desired to secure during her life the services and companionship of the defendant, Edward Friebe. In performance of the contract he resigned a lucrative position to enter her service, and removed with his wife, Abby F. Friebe, to her residence where they continued to reside and care for her until her death. It is because of the consideration thus furnished, that they also rely upon the further provision, that where the transfer is " a *bona fide* purchase for full consideration in money or money's worth," a tax shall not be levied. To have the benefit of the exemption they must bring themselves within its terms. St. 1909, c. 490, Part IV. § 1. *Brooks* v. *West Springfield*, 193 Mass. 190, 192. The policy of the law is, that the owner of property shall not defeat or evade the tax by any form of conveyance or transfer, where after death the income, profit or enjoyment enures to the benefit of those who are not exempted. *Minot* y. *Winthrop*, 162 Mass. 113. *Emmons* v. *Shaw*, 171 Mass. 410, 412. The intention to evade may be apparent in the instrument of transfer, or it may be found when all the circumstances attending the transaction are disclosed, yet from whichever source the proof may be derived, when the evasion is established the transfer is not " *bona fide* " as required by the statute. The transfer or conveyance, however, would not be invalidated, or the tax defeated, as the fund or property would be liable to taxation in the possession of the grantee, donee, or transferee. *Tritt* v. *Crotzer*, 13 Penn. St. 451.

The statute also requires that the consideration must be for the full value of the property whether paid in money, or the acceptance by the transferror of property or services, or some benefit of an equivalent pecuniary measurement, and the defendants strongly urge that the principle which obtains between vendor and purchaser, or where prior equities between purchasers of the same estate, or the rights of creditors are to be ascertained, should be applied. To sustain a right to specific performance of an unexecuted contract, or the rights of an innocent purchaser for value and without notice, it is not necessary that the consideration should be adequate, although it must be valuable. *Somes* v. *Brewer*, 2 Pick. 184. *Lee* v. *Kirby*, 104 Mass. 420, 428. *Wood* v. *Chapin*, 13 N. Y. 509. *Borell* v. *Dann*, 2 Hare, 440, 450. *Basset* v. *Norsworthy*, 2 White & Tudor's

Lead. Cas. in Eq. (4th Am. ed.) 1. But under the construction contended for, only conveyances or transfers founded on a good or meritorious, as distinguished from a valuable consideration would be included. See 2 Kent Com. (14th ed.) 464, 465, and *Floyer* v. *Bankes*, 3 DeG., J. & S. 306. It also places within the power of the parties the right to agree upon a price in money, or on some right, interest or benefit accruing to one party or the other as a basis of transference, which, while recognized as being valuable, might be wholly inadequate when compared with the fair market value of the property. It furthermore would substitute their judgment, although honestly exercised, for the approval of the tax commissioner, who by § 20 alone is empowered to determine the valuation.

The legislative purpose has been expressed in plain, unambiguous words, and a construction should not be adopted by reading into the statute a qualification which deprives them of their ordinary and natural import. It is within the power of the Legislature to enlarge the exemption, but until this is done, the statute is not complied with unless the consideration, whatever form it may assume, is not only valuable, but full, by covering the value in money, or the equivalent in money of the property transferred. *United States* v. *Hart*, 4 Fed. Rep. 292. *United States* v. *Banks*, 17 Fed. Rep. 322, 323. If services rendered or to be rendered constitute the consideration as in the present case, their value may be inquired into and ascertained, and where in "money's worth" they equal or exceed the fair value of the property at the death of the transferror, no tax can be imposed. If they fall below such value, there is no provision for a reduction, leaving the excess only to be taxed as a gratuity.

The services to be rendered by Edward Friebe, when viewed from the situation in which he and Mrs. Lincoln were placed, even if estimated on the basis of his salary and earnings received in the position he left and then capitalized on his expectation of life, exclusive of the contingency, that if he had continued in his former employment he might have been discharged or have become incapacitated, are insufficient in amount to equal one half of the cash value at her death of the bonds as stated in the petition and admitted by the defendants.

We are therefore of opinion, that, while the appeal of the ben-

eficiaries cannot be sustained, so much of the decree of the Probate Court as held that the bonds were not subject to taxation must be reversed under the first appeal, but in all other respects it is affirmed.

*Decree accordingly.*