## COMMISSIONER OF INTERNAL REVENUE v. BRISTOL.

### No. 3658.

Circuit Court of Appeals, First Circuit.

June 27, 1941.

L. W. Post, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for the Commissioner.

George D. Brabson, of Washington, D. C. (D. H. Blair, of Washington, D. C., and Frank H. Noyes, of Boston, Mass., on the brief), for Bristol.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This is a petition by the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals in which the Board decided that there was no deficiency owing but that there was an overpayment by the respondent of a gift tax for the year 1937 in the amount of $4,641.60.

Pursuant to an ante-nuptial agreement between the taxpayer and his intended wife, the taxpayer purchased two annuities for her and transferred two pieces of realty to himself and her as tenants by the entirety in consideration of her relinquishment of the statutory rights she might have in certain stocks then owned by him. The question is whether the wife's relinquishment of these prospective rights constituted adequate and full consideration in money or money's worth for the transfers made to her by the taxpayer.

The taxpayer and his brother owned and controlled the Foxboro Company, a manufacturing corporation in Foxboro, Massachusetts, which had been in his family for many years. He desired to keep control of the stock of the Company and to insure that upon his death it would go to some of his six children by his first marriage. He was about to remarry, and he consulted his attorney as to the effect of his remarriage upon the family plan to retain control of the Company. The attorney informed the taxpayer that in the event of his death, under the laws of Massachusetts, his widow would acquire a one-third interest in all his property.

The attorney also informed the taxpayer that it would be possible to transfer other property to his intended wife in lieu of her statutory interests. He advised him that the desired result could be accomplished by a will executed by the taxpayer and assented to by the intended wife, plus a transfer of certain other property to her. The taxpayer discussed the matter with the intended wife in the presence of his attorney, and she agreed to accept two annuities and an interest in two pieces of real estate as tenant by the entirety in lieu of any interest which she might have otherwise acquired in the Company's stock. At the time this agreement was made the taxpayer owned 130,230 shares of the Company's stock, valued at $6 per share, i. e., $781,380, the two pieces of real estate transferred to him and his wife as tenants by the entirety, valued at $34,000, and certain other real estate and securities of much less value than the stock in the Company.

By a will executed August 24, 1937, the taxpayer provided for the carrying out of the terms of the ante-nuptial agreement. By the terms of this will he bequeathed his Foxboro Company stock to one of his sons and to a bank on certain trusts, and left one-third of the residue of his estate, exclusive of this stock, to his intended wife. The latter attached to the will her acknowledgment of the will, and her consent thereto, and an agreement not to waive its provisions and attempt to take her intestate share. On August 26, 1937, the day they were married, he purchased two annuities which cost $51,983 each, payable to his wife for life. On August 27, 1937, he transferred to himself and his wife as tenants by the entirety, in accordance with the agreement, his Foxboro winter home and his Falmouth summer home. There is no suspicion that the transaction was not in good faith or that it was entered into to evade taxes. It was a purely business transaction.

The taxpayer filed a gift tax return for the year 1937 in which he reported as taxable gifts the two annuities purchased for his wife. He paid a gift tax in the sum of $4,641.60 which was assessed against him on the basis of this return. In the same return he reported the transfer of the two parcels of real estate to himself and his wife as tenants by the entirety but claimed that these conveyances did not constitute taxable gifts.

The Commissioner notified the taxpayer on September 6, 1938, that the transfer of real estate to himself and his wife as tenants by the entirety was a taxable gift and gave notice of a deficiency in the sum of $2,056.92.

The taxpayer contested this deficiency, and on November 29, 1938, he filed a claim for refund of the gift tax assessed and paid in 1937 in the sum of $4,641.60 on the

ground that the transfers of the annuities and the real estate were in no sense gifts but were transfers of property for adequate and full consideration in money or money's worth pursuant to the marital agreement. The Commissioner refused to accede to the taxpayer's claims and assessed a deficiency.

Upon review, the Board of Tax Appeals upheld the contentions of the taxpayer. It held that the transfers here involved were made for adequate and full consideration in money or money's worth and, therefore, they were not subject to the gift tax. The Commissioner has appealed.

Each of the two annuities transferred pursuant to the agreement cost $51,983, a total of $103,966. The agreed value of the wife's interest in the real estate transferred to her and her husband as tenants by the entirety was $19,550, the method of computation of which is set out in the margin.[1] Thus the wife received, pursuant to the agreement, property to the value of $123,516. The taxpayer contends that, pursuant to the agreement, the wife relinquished her rights in the stock, and that the alleged value of the rights relinquished was $149,764.50, computed by the same manner as that used by the Commissioner in valuing the wife's interest in the real estate transferred.[2] The Commissioner con-

ceded on oral argument that if the method of computing this alleged interest of the wife in the stock were proper, the figure was correct. He denied that there was any present interest capable of evaluation, and contended that even if there were, there was no possible method of evaluation of this interest in money or money's worth.

We agree with the Commissioner that the relinquishment by the wife of her statutory interest in the taxpayer's estate was not adequate and full consideration in money or money's worth for the transfer to her of the annuities and the interest in the pieces of real property. The transfers were, therefore, taxable under the provisions of Sections 501(a)[3] and 503[4] of the Revenue Act of 1932 (47 Stat. 245, 247, 26 U.S.C.A. Internal Revenue Acts, pages 580, 585).

The laws of Massachusetts provide that if a husband in the taxpayer's circumstances, i. e., with issue living, were to die intestate, either totally or partially, his surviving widow is entitled to one-third of the estate.[5] There was some discussion at the oral argument as to whether the words "real and personal property not disposed of by will", as used in this section, did not indicate that a husband, by will, could defeat his wife's interest in the property remaining in his estate at death. Examination of

---

[1] Value of two pieces of real estate transferred .... $34,000.00

The present worth of the right to receive the property at the death of a person aged 69 years (the taxpayer) provided a person aged 53 years (the wife) shall survive, computed according to actuarial tables of mortality:—$34,000 x 0.575 ................. 19,550.00

Value of the transfers of real estate .............. 19,550.00

[2] Value of stock owned by taxpayer in August 1937 .. $781,380.00

Value of ⅓ of the stock, the interest allegedly received by the wife upon her marriage to the taxpayer ............ $260,460.00

Present worth of the right to receive this alleged interest at the death of a person aged 69 (the taxpayer) provided a person aged 53 (the wife) shall survive:—$260,-460.00 x 0.575 ............ $149,764.50

[3] "§ 501. Imposition of Tax

"(a) For the calendar year 1932 and each calendar year thereafter a tax

* * * shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift."

[4] "§ 503. Transfer for Less than Adequate and Full Consideration

"Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year."

[5] Mass.Gen.Laws (Ter. ed.) c. 190, § 1:

"Section 1. A surviving husband or wife shall, after the payment of the debts of the deceased and the charges of his last sickness and funeral and of the settlement of his estate, * * * be entitled to the following share in his real and personal property not disposed of by will:

* * *

"(2) If the deceased leaves issue, the survivor shall take one third of the personal and one third of the real property."

this and the succeeding chapter shows that Chapter 190 refers only to intestate property, whether because there was no will or because not covered by the will, and that Chapter 191 contains all the rights of the surviving spouse as to property disposed of by will. If the taxpayer should die testate, his surviving widow could waive the provisions of his will and take the share set aside for her by statute.[6] There is also provision for dower in real property which is waived if not demanded.[7] It is the contention of the taxpayer that the binding ante-nuptial relinquishment of these various rights by the intended wife constituted adequate and full consideration in money or money's worth for the transfers by the husband. We cannot agree.

It is well settled law in Massachusetts that the relinquishment by an intended wife of her statutory rights to share in her husband's estate in the event of his death is sufficient consideration to support a contract by the husband to transfer to her certain property. Wellington v. Rugg, 1922, 243 Mass. 30, 136 N.E. 831; Collins v. Collins, 1912, 212 Mass. 131, 98 N.E. 588; Tarbell v. Tarbell, 1865, 10 Allen, Mass., 278; cf. Eaton v. Eaton, 1919, 233 Mass. 351, 124 N.E. 37, 5 A.L.R. 1426. Thus the agreement between the taxpayer and his wife is binding and enforcible.

However, it is equally well established that though mutual promises may be common law consideration sufficient to support an agreement, they may not be such consideration as will satisfy the statutory requirement of "an adequate and full consideration in money or money's worth". Taft v. Commissioner, 1938, 304 U.S. 351, 58 S.Ct. 891, 894, 82 L.Ed. 1393, 116 A.L.R. 346; Empire Trust Co. v. Commissioner, 4 Cir., 1938, 94 F.2d 307, 310; Stella S. Housman, 1938, 38 B.T.A. 1007, 1011. It is our opinion that the relinquishment of the wife's statutory rights was not consideration within the meaning of the word as used by Congress in Section 503 of the Revenue Act of 1932, supra.

Section 503, providing that a transfer shall be deemed a gift unless the transferor receives full and adequate *consideration* in money or money's worth, appears to mean that any transfer of property is to be treated as a gift to the extent that the transferor does not receive in return an adequate and full *equivalent* in money or something which can be valued in money. "Consideration", as used in Section 503, is not the same as common law consideration; it means that when the transferor gives something away and does not at the same time replace it with money of equal value or some goods or services capable of being evaluated in money, he is deemed to have made a gift within the taxing law. A similar phrase in the Massachusetts succession tax law was so construed to require "that the consideration must be for the full value of the property whether paid in money, or the acceptance by the transferor of property or services, or some benefit of an equivalent pecuniary measurement". State Street Trust Co. v.

---

[6] id., c. 191, § 15:
"Section 15. The surviving husband or wife of a deceased person, * * * within six months after the probate of the will of such deceased, may file in the registry of probate a writing signed by him or by her, waiving any provisions that may have been made in it for him or for her, or claiming such portion of the estate of the deceased as he or she would have taken if the deceased had died intestate, and he or she shall thereupon take the same portion of the property of the deceased, real and personal, that he or she would have taken if the deceased had died intestate; except that if he or she would thus take real and personal property to an amount exceeding ten thousand dollars in value, he or she shall receive in addition to that amount only the income during his or her life of the excess of his or her share of such estate above that amount, the personal property to be held in trust and the real property vested in him or her for life, from the death of the deceased * * *."

[7] id., c. 189, § 1:
"Section 1. * * * A wife shall, upon the death of her husband, hold her dower at common law in her deceased husband's land. * * * To be entitled to such curtesy or dower the surviving husband or wife shall file his or her election in claim therefor in the registry of probate within six months * * * and shall thereupon hold instead of the interest in real property given in section one of chapter one hundred and ninety [Note 5, supra], curtesy or dower, respectively, otherwise such estate shall be held to be waived. * * *"

It is further provided in c. 191, § 17 that no dower or curtesy shall be allowed in addition to the provisions of a will unless the will so provides."

Stevens, 1911, 209 Mass. 373, 379, 95 N.E. 851, 853. Cf. United States v. Banks, D. C.S.D.N.Y. 1883, 17 F. 322, 323. To our mind, the purpose of this section in the gift tax statute and similar wording in sections of the federal estate tax law was to prevent the depletion of the transferor's or decedent's estate, unless a tax was paid on the transfer, by requiring that the transferor or decedent receive in exchange something of the same money value.

We do not think that under any interpretation of the revenue act could Mrs. Bristol's release of her statutory right to share in Mr. Bristol's personalty at his death be regarded as consideration "in money or money's worth". The taxpayer's resulting right to bequeath his stock in the Foxboro Company to people other than his wife obviously has no market value, cannot be sold, and does not increase the value of the property affected. The taxpayer evaluated the alleged rights of the wife in the stock of the Foxboro Company as though she had an inchoate right in the taxpayer's personal property, similar to common-law dower in real property, which she was certain to acquire provided she survived her husband. This was the entire basis of the computation set out in footnote 2, supra. But the wife has no such inchoate right. The only right that the wife has in her husband's personalty is a prospective right to have a one-third share of the personal estate belonging to her husband at his death. Until the moment of the taxpayer's death, this prospective right of his wife may be either totally or partially defeated either by financial reverses which deprive the taxpayer of his personal property, including the Foxboro Company stock, or by deliberate inter vivos transfer of the property by the taxpayer whether or not with the express intent to defeat his wife's interest therein. Redman v. Churchill, 1918, 230 Mass. 415, 119 N.E. 953; Leonard v. Leonard, 1902, 181 Mass. 458, 63 N.E. 1068, 92 Am.St.Rep. 426; cf. Holzbeierlein v. Holzbeierlein, 1937, 67 App.D.C. 219, 91 F.2d 250. The taxpayer may even make a present transfer of all his personal property to a trustee, reserving a beneficial life interest to himself with a gift over to a third person on his death, and reserving the right of variation by subsequent appointment, even though all this is done for the express purpose of preventing his wife from sharing in his estate. Kelley v. Snow, 1904, 185 Mass. 288, 70 N.E. 89. The right of the wife, during her husband's lifetime, to share eventually in his personalty bears more resemblance to a mere expectancy which can be defeated than to inchoate dower. Cf. West v. Miller, 7 Cir., 1935, 78 F.2d 479, 483, certiorari denied, 1935, 296 U.S. 633, 56 S.Ct. 156, 80 L.Ed. 450; United States v. Banks, supra; Worcester County National Bank v. Commissioner of Corporations, etc., 1931, 275 Mass. 216, 175 N.E. 726; Humes v. United States, 1928, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667; Mossberg v. McLaughlin, 1940, 127 Conn. 48, 14 A.2d 733 at page 735.

Release of common-law dower might stand on a somewhat different footing, since inchoate dower is an indefeasible right, undoubtedly susceptible to approximate valuation and, after release by a wife, the affected property can be sold by the husband for a substantially larger sum. However, according to our view of the proper interpretation of the phrase "adequate and full consideration in money or money's worth", release of dower and analogous rights cannot be regarded as consideration for purposes of the gift tax.

The federal estate tax originally provided that property transferred would not be included in the decedent's gross estate if the transfer was the result of a bona fide sale for a fair consideration in money or money's worth. See, e. g., Revenue Act of 1924, § 302, 43 Stat. 304, 26 U.S.C.A. Internal Revenue Acts, page 67. In 1926 Congress amended this to read "adequate and full consideration". 26 U.S.C.A. Int. Rev.Acts, page 227. The obvious purpose of the amendment was "to narrow the class of deductible claims". Taft v. Commissioner, 304 U.S. 351, 356, 58 S.Ct. 891, 894, 82 L.Ed. 1393, 116 A.L.R. 346.

It seems probable that the result of this amendment was to exclude the release of dower or analogous statutory rights as consideration for purposes of the estate tax of 1926. Under previous phraseology, such releases had been held "fair consideration" in cases of "bona fide sale" so that property passing by contract, as distinguished from will or intestacy, had occasionally escaped inclusion in the gross estate. Ferguson v. Dickson, 3 Cir., 300 F. 961; McCaughn v. Carver, 3 Cir., 19 F.2d 126; Stubblefield v. United States,

Ct.Cl., 6 F.Supp. 440. In all these cases the decedent had died prior to the enactment of the Revenue Act of 1926.

The only case in which the phrasing of the 1926 act has been applied to dower rights resulted in a holding that their release does not constitute "adequate and full consideration." Empire Trust Co. v. Commissioner, 4 Cir., 94 F.2d 307, 309. In that case the decedent died in 1931. Upon his death $50,000 passed to his wife in pursuance of a contract by which she had agreed to release her right of dower as well as all statutory rights in the remainder of the decedent's estate. The Circuit Court of Appeals for the Fourth Circuit insisted upon the inclusion of the entire $50,000 in the decedent's gross estate, pointing out the change in the applicable provisions of the estate tax since the decision in Ferguson v. Dickson, supra [300 F. 963], and the express recognition in the latter case of the difference between the phrases "bona fide sale for a fair consideration" and "adequate and full consideration". Cf. Hopkins v. Magruder, D.C., 34 F.Supp. 381; Sheets v. Commissioner, 8 Cir., 95 F.2d 727, 730.

The only case in point, therefore, holds that under the estate tax provisions of the Revenue Act of 1926 release of dower cannot be regarded as "adequate and full consideration in money or money's worth"; in fact, cannot be regarded as consideration at all, for the court allowed no deduction from the gross estate. The phraseology of the gift tax, enacted in 1932, is precisely the same, and it therefore seems a fair assumption that the consideration requisite under the two taxes is identical. Since release of dower does not meet the requirements of the estate tax, it does not meet the standards required by the identical words of the gift tax.

In 1932 Congress in § 804 of the Revenue Act of that year, 47 Stat. 280, 26 U.S.C.A. Int.Rev.Acts, page 642, amended § 303(d) of the Revenue Act of 1926 by adding the following provision:

"For the purposes of this title, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.' "

It is argued that the addition of this provision is an indication that Congress believed the release of dower to constitute consideration prior to 1932, and further that the amendment is restricted in effectiveness to the estate tax, since it expressly says "For the purposes of *this title*", "this title" being title 3 which deals exclusively with the estate tax. We think, however, that the amendment was added merely from an abundance of caution and should be regarded as declaratory of the law as it previously existed. Between the amendment of the estate tax in 1926 so as to require "adequate and full consideration", and the amendment of § 303(d) in 1932, McCaughn v. Carver, and Stubblefield v. United States, both supra, had been decided. While these dealt with the estate tax as it existed prior to 1926, they pointed the way to a possible means of tax avoidance which Congress may not have been certain it had forbidden with sufficient clarity, and therefore felt constrained to prohibit in words which could not be misconstrued. That the amendment may be regarded as no more than declaratory is to some extent indicated by the committee reports, both of which refer to the contrary view as "a subversion of the legislative intent expressed in § 302(a) and (b)." H. Rep. 703, 72d Cong., 1st Sess. (1932) 47; S.Rep. 665 (1932) 50. As the court said in Empire Trust Co. v. Commissioner, supra, "The reports of the committees of both Houses of Congress discussing this latter amendment show conclusively that the amendment was declaratory of the law as it existed in the act of 1926 and was made to avoid any misinterpretation of that act." In Sheets v. Commissioner, 8 Cir., 95 F.2d 727, 730, the court said, "* * * we think that the amendment should be regarded as a declaratory definition of terms * * *."

If the amendment of 1932 be regarded as merely declaratory of the previous intent of Congress, then the phrase "adequate and full consideration" must be regarded as excluding release of dower as consideration under the estate tax of 1926 and, by parity of reasoning, under the gift tax of 1932.

■■ However, even if the taxpayer is correct in contending that the 1932 amendment to the estate tax resulted in an actual change in the treatment of dower and analogous rights as consideration for estate tax purposes, we think it probable that the same provisions should be read into the gift tax. The phraseology is identical and, while the entire phrase "adequate and

full consideration in money or money's worth" is expressly qualified in the estate tax, it seems improbable that the identical phrase should be accorded an inconsistent meaning in the gift tax, enacted at the same time. Why Congress did not apply § 804 to the gift tax we do not know. It may have been inadvertence; it may have been that Congress felt that correction of the erroneous interpretation of the words in the estate tax would forestall similar erroneous construction of the same words in the newly enacted gift tax. Whatever may have been the reason, we believe that as an original matter, the phrase as used in the gift tax was intended to have a construction similar to that given by § 804; and we do not feel that the mere absence of such an express limitation should prevent that interpretation. The provisions of the revenue act imposing the gift tax have always been interpreted by the courts by reference to the complementary estate tax. "The gift tax was supplementary to the estate tax. The two are in pari materia and must be construed together. * * * An important, if not the main purpose of the gift tax was to prevent or compensate for avoidance of death taxes by taxing the gifts of property inter vivos which, but for the gifts, would be subject in its original or converted form to the tax laid upon transfers at death." Sanford's Estate v. Commissioner, 308 U.S. 39, 44, 60 S. Ct. 51, 56, 84 L.Ed. 20. The interpretation we adopt follows out the policy of the gift tax as recognized in the Sanford case supra. Had Mr. Bristol died, Mrs. Bristol's dower rights would have become vested and her statutory share in the property would have passed to her, but nevertheless the value of her dower rights would have been included in Mr. Bristol's gross estate. To hold that the release of dower by Mrs. Bristol during her husband's life constitutes consideration for any transfer by him to her would in a sense defeat the purpose of the gift tax since it would permit an untaxed transfer by gift of property which would normally be subject to the estate tax upon the husband's death. Mossberg v. McLaughlin, supra.

Another important purpose of the gift tax has always been to discourage the division of large estates among members of a family so as to distribute income and thereby to avoid the imposition of high surtaxes.[8] To consider release of dower rights as consideration within the meaning of the gift tax would result in a serious curtailment of the usefulness of the gift tax in this situation, since it would inevitably permit the tax-free separation from the husband's estate of a substantial proportion of his income-producing assets. Moreover, this tax-free transaction would take place under the very circumstances in which a division of assets in order to avoid surtaxes would be the most likely and practical—that is, the division between husband and wife so that the entire income will remain in the family. To hold that release of dower rights is consideration for a gift between husband and wife would therefore in a wide range of cases frustrate the purpose of the gift tax in its chief role as protector of the estate and income taxes. "Doubt, if there can be any, is not likely to survive a consideration of the mischiefs certain to be engendered by any other ruling. * * * Expediency may tip the scales when arguments are nicely balanced." Woolford Realty Co. v. Rose, 286 U.S. 319, 329, 330, 52 S.Ct 568, 570, 76 L.Ed. 1128.

The transfers of the annuities and of the two pieces of real estate were without consideration in money or money's worth within the meaning of the gift tax, and were, therefore, taxable under the Revenue Act of 1932, supra. The refund of the tax on the transfer of the annuities was properly refused by the Commissioner, and the deficiency tax on the transfer of the real property correctly assessed.

The decision of the Board of Tax Appeals is vacated, and the case is remanded to the Board for further proceedings in conformity with this opinion.

[8] "The gift tax will supplement both the estate tax and the income tax. It will tend to reduce the incentive to make gifts in order that distribution of future income from the donated property may be to a number of persons with the result that the taxes imposed by the higher brackets of the income tax law are avoided." S. Rep. 665, 72d Cong., 1st Sess. (1932).