**HARRIS v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE v. HARRIS.**

No. 62, Docket 21224.

United States Court of Appeals
Second Circuit.

Argued Nov. 2, 1949.

Decided Dec. 22, 1949.

I. N. Wilpon, Brooklyn, N. Y., for petitioner.

C. Oliphant, Theron L. Caudle, Ellis N. Slack, Washington, D. C., I. Henry Kutz, Washington, D. C., argued for respondent.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

L. HAND, Chief Judge.

This cause comes up upon petitions of the taxpayer and the Commissioner to review an order of the Tax Court *in banc,* deciding her liability for gift taxes in the years 1940, 1941, 1942 and 1943. The tax for each of the first three years depends upon the same question: *i. e.* whether bank deposits in United States banks of a nonresident, not a citizen, are excluded from property subject to a gift tax. The Tax Court held that they were not excluded, and taxed the taxpayer accordingly. The

tax for the year 1943 was upon payments by the taxpayer to her husband, in performance of an agreement, executed in anticipation of divorce and dependent upon it for its validity, which was later adopted by the decree. The taxpayer argues that these payments were not "founded upon a promise or agreement," but upon the obligation established by the decree. The Tax Court so held, and expunged the deficiency.

### The Taxpayer's Appeal.

The estate tax [1] excludes from taxation, (a) any amount receivable as insurance upon the life of a "nonresident not a citizen", and (b) "any moneys deposited * * * by or for a nonresident not a citizen * * * who was not engaged in business in the United States." Section 1000(b) of the gift tax [2] excludes the property of "a nonresident not a citizen", which was not "situated within the United States"; but, since deposits in United States banks are so "situated," the taxpayer must, and does, maintain that we should read the exclusion of § 863(b) into § 1000 (b). Her chief reliance is Merrill v. Fahs,[3] where the Supreme Court, following its decision in Sandford's Estate v. Commissioner,[4] held that the gift tax, being ancillary to the estate tax, should be read as *in pari materia*. The question in Merrill v. Fahs [3] was of the meaning of the phrase, "money or money's worth," in the gift tax,[5] which that act carried over from the estate tax, and which in each act excluded property transferred upon such a consideration. In definition of that phrase the estate tax in 1932 provided [6] that the relinquishment of marital rights should not be deemed "money or money's worth." The gift tax, passed in the same year, did not incorporate this definition; but the Supreme Court held that it was nevertheless by implication to be read into § 1002. The First Circuit [7] had already held the same way. We of course accept to the full this canon for the interpretation of the gift tax; but, like every other aid in interpretation, it must yield when the text is clearly enough to the contrary, as it is in the case at bar. We start with the fact that in Merrill v. Fahs, supra,[3] the court thought that the definition of "money or money's worth," added to the estate tax in 1932 by what is now § 812(b), was put in only out of abundant caution, which nobody can suppose to be true of the exclusion by § 863 from property situated within the United States of life insurance policies and bank deposits. Moreover, an analysis of the two statutes confirms the conclusion that the gift tax should not be read to imply § 863.

In 1931 § 303(d) of the estate tax was in substance the same as § 862 of the present act. It included shares in domestic corporations—§ 862(a)—and property which the decedent had any power to transfer whether it was situated in the United States when he made the transfer or at his death—§ 862(b). When the gift tax was drawn in 1932 the first clause of § 303(d) was lifted verbally and made the next to the last section of the act—§ 531(b). The exact words were: "Stock in a domestic corporation owned and held by a nonresident shall be deemed property situated within the United States," and they are literally the same as those of the first clause of § 303(d) with the omission of the word, "decedent," after "nonresident," and the insertion of the word, "situated" after "property." There cannot therefore be the least doubt of the provenience of § 531(b), now § 1030(b). The draftsmen omitted the second clause of § 303(d) and the whole of § 303(e), now § 863. It was indeed unnecessary to carry over the first clause of § 303(d) for shares in a domestic corporation were certainly property situated in the United States, but it was necessary to omit the second clause; for that

1. 863, Title 26, U.S.C.A.

2. § 1000 (b), Title 26 U.S.C.A.

3. 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963.

4. 308 U.S. 39, 44, 60 S.Ct. 51, 84 L.Ed. 20.

5. § 1002, Title 26 U.S.C.A.

6. § 812 (b), Title 26 U.S.C.A.

7. Commissioner of Internal Revenue v. Bristol, 1 Cir., 121 F.2d 129.

was altogether inapplicable to gift taxes. As to § 303(d) the draftsmen therefore showed unmistakable evidence of deliberate choice, actuated by a distinction between estate taxes and gift taxes. They also omitted all of § 303(e)—now § 863—and that omission the taxpayer must, we think, put down to a belief that it would by implication be carried over into the gift tax and is to be read as an exclusion from § 501(b), now § 1000(b). Certainly it is inconceivable that when the draftsmen dealt so deliberately with § 303(d), taking over a part and leaving the rest, they exercised no deliberate choice in omitting the whole of the next adjacent—not even section—but subdivision of a section. The taxpayer does not mean to go so far; but her alternative is equally improbable, for it presupposes that faced with the exclusory section—§ 303(e)—they did deliberately choose to leave it out, because they assumed that it would be apparent at once that it would be implied. If so, they concerned themselves to repeat what was redundant—the first clause of § 303(d)—and left to inference what was necessary.

The taxpayer answers that, since the definition which excluded the relinquishment of marital rights from "money and money's worth" was put into § 303(d) in 1932, there was as much reason in Merrill v. Fahs, supra,[3] to infer that it should not apply to the gift tax, as there is to infer that § 303(e) should not apply to the gift tax, for to leave behind the definition showed that deliberate choice or selection on which we are depending. However, it is not true, strictly speaking, that the first clause of § 303(d) was carried over to the gift tax and the definition was left behind. The definition was added to the section at the same time that the gift tax was passed; and, as a practical matter we should have no warrant for saying that the draftsmen of the gift tax had the addition before them. Be that as it may, even though we do conceive that their failure to transplant the definition into the gift tax was deliberate and presupposed a belief that it was implicit in § 501(b), certainly there is no ground for extending that hypothesis to cover § 303(e) which directly contradicts the general language of § 501(b).

■ The taxpayer finally argues that we should supply the omission by recourse to the purposes which actuated the exclusion in the estate tax. These were to encourage nonresidents (a) to take out life policies with United States underwriters, and (b) to keep their deposits in United States banks. So far as concerns deposits, it is an obvious answer that any alien who knew that his deposits were subject to a gift tax would withdraw them before making a gift, and the tax would at best catch only the unwary. Not so as to bequests, for no one can foretell when he will die. A stronger argument can be made as to insurance policies. In 1932 the estate tax only excluded the first $40,000 of all policies payable to other beneficiaries than the insured's estate, so that without the second clause of § 303(e) the estate of a non-resident decedent would have been taxable upon all policies which he took out in the name of his executor, and upon the excess of all policies over $40,000, of which any one else was beneficiary. Congress apparently did think that the exclusion of all policies from the estate tax would offer an inducement to nonresidents to take out policies in United States companies; but there is much less reason to suppose that a similar exclusion in the gift tax would have been an equal inducement. The regulation which accompanied the enactment of the gift tax of 1932 provided that only irrevocable transfers of policies should be deemed gifts, and that they should be measured by the surrender value at the time, plus prepaid insurance adjusted to the date of the gift;[8] and, although the measure of the value of the gift has since then been changed,[9] that is not important. We may therefore concede that it is theoretically possible that a nonresident might be dissuaded from taking out insurance in

8. Treasury Regulations 79—Article 2 (5).
9. Guggenheim v. Rasquin, 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813; U. S. v. Ryerson, 312 U.S. 260, 61 S.Ct. 479, 85 L.Ed. 819.

a United States company because he learned that if, while he lived, he wished to make an irrevocable gift of it, he would be taxed on its surrender value. It is always a dangerous business to fill in the text of a statute from its purposes, and, although it is a duty often unavoidable, it is utterly unwarranted unless the omission from, or corruption of, the text is plain. We should go clean beyond all permissible extrapolation of any declared purpose, if we were to say in the face of this apparently deliberate omission that Congress must have meant to give United States insurance companies what was possibly, nay probably, a trifling and hypothetical advantage. And this conclusion is immensely fortified, when we consider that we cannot separate policies from bank deposits, and that there could not have been any similar purpose as to them. The order is affirmed as to the years 1940, 1941 and 1942.

### The Commissioner's Appeal.

By agreement between the taxpayer and her husband they mutually exchanged certain rights they had against each other, including the surrender by each of any "share in any capacity whatsoever in the estate of the other party upon the latter's death." The Tax Court fixed the excess of the value of the property which the taxpayer gave her husband over what he gave her at $107,150.78; and we do not understand that this amount is in dispute, except as to the husband's annuity of $5,000 for ten years, of which more hereafter. The taxpayer having paid this excess in exchange for her husband's relinquishment of all his marital rights in her property on her death, if the agreement had stood alone, there can be no doubt that under Merrill v. Fahs, supra,[3] a gift tax would have been due. Moreover, although the agreement provided that it shall be "of the essence * * * that the settlement * * * shall not * * * become binding upon either party unless a decree of divorce shall be entered in the pending Nevada action," the "covenants" which it contained were to "survive any decree of divorce." Thus

the question arises whether the payments after decree should be treated as "founded upon a promise or agreement", as required by § 812(b), or as debts "founded" solely upon the obligation of a judgment for the payment of money.

In Commissioner of Internal Revenue v. Maresi [10] we held that payments which the divorce decree had adopted and to which it added its sanction, were not "founded" upon the promise or agreement, because that had been the settled practice of the Board of Tax Appeals, confirmed by two Courts of Appeal, and because we believed that the contrary conclusion was not so inevitable as to justify overruling that authority. Moreover we went further; we said that § 812(b) meant "that the legal transaction which creates the obligation is the agreement, and in that sense the allowances are not 'founded' upon the agreement but upon the command of the court." We viewed the agreement, whose existence as a contract was conditional upon the entry of the decree, to be no more than a suggested compromise until confirmed, which the court might or might not choose to accept as the measure of the parties' obligations, and which became an obligation only by the decree. The taxpayer says that the record in that case discloses that the agreement, there as here, provided that it should continue to be in force after the decree was entered, and for that reason she relies upon this decision as an authority. It is true that the agreement did so provide, but we have examined the opinion of the Tax Court, and the briefs, and in neither was there any mention of that circumstance. The decision stands for no more than that, when the validity of the settlement is made conditional upon its adoption by the decree, and when it does not by its terms survive the decree, the payments are not "founded" upon the "promise or agreement." Commissioner of Internal Revenue v. Converse [11] somewhat more favored the taxpayer, for the divorce court allowed the "lump sum" of $625,000 to the wife, apparently in commutation of the wife's annuity of $15,000 a year, which

10. 2 Cir., 156 F.2d 929, 931.

11. 2 Cir., 163 F.2d 131, 174 A.L.R. 199.

was a departure from the terms of the settlement. However, it adds nothing to Commissioner of Internal Revenue v. Maresi on which it depended as authority. In Barnard's Estate v. Commissioner [12] the wife paid her husband two sums, each of $50,000; the first, in pursuance of a written agreement which anticipated a decree of divorce, and which provided that the decree should not "affect or in any manner alter the terms and conditions of this agreement." After that payment had been made, a decree of divorce was entered that "ratified, adopted and approved" the "written agreement"; but which said nothing of an oral agreement entered into at the same time as the written one, requiring a second payment of $50,000, which was in fact made after the decree was entered. We held that both sums were taxable, and not even a plausible objection could be raised as to the second, for the decree had not incorporated it, or been necessary to make it valid. We held the first payment taxable, because it was made before there was any decree on which it could have been "founded," and because the agreement had provided that it should survive the decree when it was entered. We can see no inconsistency between this decision and the two earlier ones.

In some jurisdictions contracts, made in anticipation of a divorce, are held to persist *ex proprio vigore* after the divorce decree has incorporated their terms, and has added its sanctions to those available in contract. That, for example, is the law of New York,[13] where the contract remains obligatory even after the court has modified the allowances which it originally adopted; and where the promises will be thereafter enforced by execution and the like. Perhaps, that is also the law of Nevada, which the parties provided should govern "all matters affecting the interpretation of this agreement or the rights of the parties." Be that as it may, in the case at bar, the Nevada decree having declared that the agreement was "entitled to be approved," that included the provision that its "cove-nants" should "survive" as well as any of its other stipulations. Thus the payments made under it were "founded" as much upon the "promise or agreement" as upon the decree; indeed, they were "founded" upon both; the parties chose to submit themselves to two sanctions—contempt under the divorce court and execution under the contract. The payments were therefore subject to the gift tax.

There only remains the question whether it was proper to include the commuted actuarial value of the husband's annuity at the time when the decree passed. The taxpayer's argument is that the annuity was a series of independent gifts, each maturing when made, and not to be appraised as one. This misconceives the transaction; although the payments were subject to a gift tax, they were not gifts at all, the annuity was a contract made for a valid consideration, and it is classed as a gift only because the statute says so. Once it became a contract by entry of the decree, since thereupon the taxpayer became bound to make all the payments, she did not make a new gift each month; indeed she never had any donative intent at the outset. In dealing with such a series of contractual payments, it has long been the accepted practice to appraise their present actuarial value as was done in the case at bar; we have nothing to add to what we said on this subject in Commissioner of Internal Revenue v. Maresi, supra.[10] City Bank Farmers Trust Co. v. Hoey [14] concerned an order which did not establish a permanent obligation and which could be changed from time to time as the court saw fit. Finally, any effect which the fourth article of the agreement may have upon the amount of the gift tax, we leave to the Tax Court which did not find it necessary to pass upon it. The case must be remitted to that court to redetermine the 1943 tax.

The order is affirmed as to the years 1940, 1941 and 1942.

The order is reversed as to the year 1943, and the cause remitted for further

---

12. 2 Cir., 176 F.2d 233, 234.
13. Goldman v. Goldman, 282 N.Y. 296, 26 N.E.2d 265.

14. 2 Cir., 101 F.2d 9.

proceedings in accordance with the foregoing.

SWAN, Circuit Judge (dissenting in part).

I am unable to agree with so much of the opinion as affirms the imposition of gift taxes on the bank deposits. Provisions exempting from estate taxes insurance and bank deposits of a non-resident not engaged in business in the United States first appeared in § 403(b) (3) of the Revenue Act of 1921, 42 Stat. 227, 280. No gift tax was then in force. The purpose of such exemption was to enable American insurance companies and banks to compete with foreign underwriters and banks. Senate Rep. No. 275, 67th Cong. 1st. sess. In the Revenue Act of 1924, 43 Stat. 253, 307, the exemption was carried forward as section 303(e), 26 U.S.C.A.Int.Rev.Acts, page 71, in the chapter dealing with estate taxes but did not appear in the chapter imposing a gift tax. Unless the exemption were construed to be applicable also to the gift tax the purpose of the estate tax exemption would be frustrated, in part at least. The Revenue Act of 1926, 44 Stat. 9, 26 U.S.C. A.Int.Rev.Acts, page 145 et seq., repealed the 1924 gift tax and continued the estate tax exemption by section 303(e). Consequently from 1926 to 1932 American insurance companies and banks were under no disadvantage in competing with foreign concerns for the business of non-resident depositors or applicants for life insurance.

The estate statute and the gift tax statute are *in pari materia* and must be construed together. If Congress had intended by the 1932 Act to deprive the American insurers and banks of advantages they had enjoyed for six years it seems likely that the legislative history would have disclosed such purpose. It does not. I think the literal words of § 1000(b) should yield to the purpose of the exemption. Merrill v. Fahs, 324 U.S. 308, 65 S.Ct. 655, 89 L. Ed. 963 inferentially tends to support this conclusion inasmuch as the majority opinion rejects Mr. Justice Reed's view that omission of words from the gift tax which were included in the estate tax indicated Congressional intent to accord the rights involved different treatment.